## BENANTI *v.* UNITED STATES.

No. 231. Argued October 29, 1957.—Decided December 9, 1957.

*George J. Todaro* argued the cause for petitioner. With him on the brief was *Jacob Kossman.*

*John F. Davis* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Acting Assistant Attorney General McLean* and *Beatrice Rosenberg.*

Mr. Chief Justice Warren delivered the opinion of the Court.

The question presented by petitioner is whether evidence obtained as the result of wiretapping by state law-enforcement officers, without participation by federal authorities, is admissible in a federal court. Petitioner was convicted of the illegal possession and transportation of distilled spirits without tax stamps affixed thereto in violation of 26 U. S. C. §§ 5008 (b)(1), 5642. The New York police, suspecting that petitioner and others were dealing in narcotics in violation of state law, obtained a warrant in accordance with state law [1] authorizing them to tap the wires of a bar which petitioner was known to frequent. On May 10, 1956, the police overheard a conversation between petitioner and another in which it was said that "eleven pieces" were to be transported that night at a certain time and to a certain place in New York City. Acting according to this information, the police followed and stopped a car driven by petitioner's brother. No narcotics were found, but hidden in the car were eleven five-gallon cans of alcohol without the tax stamps required by federal law. The brother and the alcohol were turned over to federal authorities and this prosecution followed.

At the trial the first government witness, a state police officer, testified to the events leading up to the discovery of the cans of alcohol in an automobile which had been driven by the petitioner and then taken by his brother to the appointed spot. No mention was made of the wiretap on direct examination. However, on cross-examination this witness admitted that the information causing the police to follow the car and intercept it came

---

[1] N. Y. Const., Art. I, § 12; N. Y. Code of Criminal Procedure, § 813–a (1942).

from a wiretap.[2] On redirect examination the prosecutor sought to prove that the wiretap had been authorized by state law. The Government introduced a second police official, who testified substantially as the first, admitting on direct examination that a wiretap had existed and on cross-examination that the discovery of the alcohol was occasioned by knowledge of the contents of the wiretapped conversation. The words of that conversation were not disclosed to the jury although they were disclosed to the trial judge and the defense counsel.[3] The

[2] R. 7: "Cross examination by Mr. Todaro [defense counsel]:

"Q. Officer, you were in the vicinity of this Reno Bar quite frequently?

"A. Yes, sir.

"Q. Did the Police Department have a tap on the Reno Bar, if you know?

"A. Yes, they have several taps on the Reno Bar.

"Q. Did you obtain any information as part of this investigation from the wiretap conversation?

"A. Did I obtain any information in regard—

"Q. Yes, in reference to the Benantis.

"A. Benanti?

"Q. Yes.

"A. Yes.

. . . . .

"Q. You also obtained information as a result of this wiretap that this car was going to be driven to a certain location?

"A. Yes.

. . . . .

"Q. But you had obtained some information through the wiretap which gave you a lead to this trap?

"A. Part of the information."

[3] R. 52: "(The following took place in the absence of the jury:)

"THE COURT: Mr. Todaro, the assistant district attorney is here with the order of the [state] court [authorizing the wiretap]. I just tell you, Mr. Todaro, I have looked at it and it does provide for the tap of these premises, so that your concession [that the tap

record is silent as to whether the prosecutor was told the words of the conversation. However, in our view it is unimportant whether he had this information or not.

Petitioner's motion to suppress the evidence was denied and he was convicted. The Court of Appeals for the Second Circuit affirmed, 244 F. 2d 389, holding that while the action of the state officials violated Section 605 of the Federal Communications Act, the evidence obtained from the violation was still admissible. We granted certiorari. 355 U. S. 801. Petitioner, relying on this Court's supervisory powers over the federal court system, claims that the admission of the evidence was barred by the Federal Constitution and Section 605. We do not reach the constitutional questions as this case can be determined under the statute.

Section 605 states in pertinent part: [4]

". . . no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person . . . ."

## I.

In *Nardone* v. *United States,* 302 U. S. 379, and 308 U. S. 338, this Court held that evidence obtained from wiretapping by federal agents was inadmissible in federal court. In *Schwartz* v. *Texas,* 344 U. S. 199, the same type

was authorized under state law], generally made, was actually well based.

"Also, for whatever factual interest it may have on this motion, Mr. Murphy overheard the conversation that night, if you want to get the full facts on that.

"The reference on the wire was to 'eleven pieces' which they thought meant narcotics, and that was why they intercepted the car."

[4] 48 Stat. 1103, 47 U. S. C. § 605.

of evidence was held admissible in a state court where it had been obtained by state agents. The case before us, containing elements from these three cases, forces a choice between the different results reached.

The *Nardone* decisions laid down the underlying premises upon which is based all subsequent consideration of Section 605. The crux of those decisions is that the plain words of the statute created a prohibition against any persons violating the integrity of a system of telephonic communication and that evidence obtained in violation of this prohibition may not be used to secure a federal conviction. *Nardone* v. *United States,* 302 U. S. 379, 382. Moreover, as the second *Nardone* decision asserts, distinctions designed to defeat the plain meaning of the statute will not be countenanced. 308 U. S. 338, 340. We hold that the correct application of the above principle dictates that evidence obtained by means forbidden by Section 605, whether by state or federal agents, is inadmissible in federal court.

In this case the statute was violated if not earlier at least upon the disclosure to the jury of the *existence* of the intercepted communication,[5] for Section 605 forbids the divulgence of "the *existence,* contents, substance, purport, effect, or meaning" of the intercepted message. The effect of that violation in contributing to the conviction here is manifest. The jury were free to speculate that the existence of the communication, the source of the Government's evidence, was further proof of petitioner's

[5] Because both an interception *and* a divulgence are present in this case we need not decide whether both elements are necessary for a violation of § 605. Also because here the disclosure was of the existence of the communication, it is not necessary for us to reach the issue whether § 605 is violated by an interception of the communication and a divulgence of its fruits without divulging the existence, contents, etc., of the communication.

criminal activities.[6] The prosecutor continued to use evidence now linked to a disclosed wiretap although he had been made aware of its existence and of its obvious significance to his case.[7]

Respondents argue that the evidence obtained from the disclosed wiretap should have been admissible by referring to *Schwartz* v. *Texas, supra,* and by drawing a parallel to the Fourth Amendment. It is urged that as long as the wiretapping occurred without the participation or even knowledge of federal law-enforcement officers, the evidence should be admitted in federal court; the Federal Government, being without fault, should not be handicapped. However, *Schwartz* v. *Texas* does not indicate approval of such a proposition. Both a state court and state law-enforcement officers were there involved. The rationale of that case is that despite the plain prohibition of Section 605, due regard to federal-state relations precluded the conclusion that Congress intended to thwart a state rule of evidence in the absence of a clear indication to that effect. In the instant

---

[6] The obvious prejudice to the petitioner from the disclosure of the wiretap is shown by efforts of the prosecution to mitigate it by showing that the wiretap had not been instigated on account of the charge for which petitioner was being tried. However, disclosure of the *existence* of the communication was the prejudicial error that was not overcome.

[7] The heart of the Government's case was (1) the testimony of the two policemen, who were present at the scene of the wiretap and at least one of whom arrested petitioner's brother and discovered the alcohol, and (2) the evidence of a government chemist as to his analysis of the seized alcohol. As the Court of Appeals below said: "But it is equally clear that but for the wiretap there would have been no basis for any prosecution whatever, as the apprehension of Angelo [petitioner's brother] and seizure of the 'eleven pieces' led to the discovery of appellant's participation in the violations of federal law for which he has been convicted; and the sequence of cause and effect is clear." 244 F. 2d, at 390.

case we are not dealing with a state rule of evidence. Although state agents committed the wiretap, we are presented with a federal conviction brought about in part by a violation of federal law,[8] in this case in a federal court.[9]

Furthermore, confronted as we are by this clear statute, and resting our decision on its provisions, it is neither necessary nor appropriate to discuss by analogy distinctions suggested to be applicable to the Fourth Amendment.[10] Section 605 contains an express, absolute prohibition against the divulgence of intercepted communications. *Nardone* v. *United States*, 302 U. S. 379, 382. This case is but another example of the use of wiretapping that was so clearly condemned under other circumstances in the second *Nardone* decision: [11]

> "To forbid the direct use of [these] methods . . . but to put no curb on their full indirect use would

---

[8] A complementary distinction was made in *Rea* v. *United States*, 350 U. S. 214. There this Court reversed the denial of an injunction against a federal agent who had seized evidence in violation of the Federal Rules of Criminal Procedure and, being unable to introduce the evidence in federal court, was about to do so in a state prosecution. In answer to the argument that such an injunction would interfere with state judicial procedure, the decision states: "The command of the federal Rules is in no way affected by anything that happens in a state court. They are designed as standards for federal agents. The fact that their violation may be condoned by state practice has no relevancy to our problem." *Id.*, at 217.

[9] The first divulgence appearing on the record occurred in court, but we do not mean to imply that an out-of-court violation of the statute would not also lead to the invalidation of a subsequent conviction.

[10] It has remained an open question in this Court whether evidence obtained solely by state agents in an illegal search may be admissible in federal court despite the Fourth Amendment. See *Lustig* v. *United States*, 338 U. S. 74, 78–79. The instant decision is not concerned with the scope of the Fourth Amendment.

[11] 308 U. S., at 340.

only invite the very methods deemed 'inconsistent with ethical standards and destructive of personal liberty.' What was said in a different context in *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 392, is pertinent here: 'The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all.' "

The above principle has for its purpose enhancement of the proper administration of criminal justice. To impute to the statute anything less would give it "a self-defeating, if not disingenuous purpose." [12]  *Nardone* v. *United States,* 308 U. S. 338, 340–341.

## II.

As an alternative argument to support the judgment below, respondent urges that the interception and divulgence in this case were no violation of Section 605 because the wiretap was placed by state agents acting in accordance with the law of New York. The Constitution and statutes of the State of New York [13] provide that an *ex parte* order authorizing a wiretap may be issued by

---

[12] *Goldstein* v. *United States,* 316 U. S. 114, is not to the contrary. The holding of that decision is that one not a party to an intercepted conversation may not bar the testimony of one who has been induced to testify by exposure of the fact that his own conversations have been wiretapped. *Id.,* at 122. The broad language in the decision that the policy of the Fourth Amendment applies to § 605 is placed in the context of a discussion of the right of one not a party to the conversation to complain. *Id.,* at 120, 121. This right was rejected on the ground that since the statute allows the "sender" of a message to consent to its divulgence, it meant to protect only him.

[13] N. Y. Const., Art. I, § 12; N. Y. Code of Criminal Procedure, § 813–a (1942).

judges of a certain rank upon the oath or affirmation of certain officials that there is reasonable ground to believe evidence of a crime may be obtained and which identifies the telephone line and the persons who are to be affected thereby. It is undisputed that an order pursuant to that law was issued in this case and that it was executed according to state law.

Respondent does not urge that, constitutionally speaking, Congress is without power to forbid such wiretapping even in the face of a conflicting state law. Cf. *Weiss* v. *United States,* 308 U. S. 321, 327. Rather the argument is that Congress has not exercised this power and that Section 605, being general in its terms, should not be deemed to operate to prevent a State from authorizing wiretapping in the exercise of its legitimate police functions. However, we read the Federal Communications Act, and Section 605 in particular, to the contrary.

The Federal Communications Act is a comprehensive scheme for the regulation of interstate communication.[14] In order to safeguard those interests protected under Section 605, that portion of the statute pertinent to this case applies both to intrastate and to interstate communications. *Weiss* v. *United States, supra.* The natural result of respondent's argument is that both interstate and intrastate communication would be removed from the

---

[14] The Federal Communications Act was the response to a Presidential message calling to the attention of Congress the disjointed exercise of federal authority over the forms of communication. The primary purpose of the Act was to create a commission "to regulate all forms of communication and to consider needed additional legislation." H. R. Rep. No. 1850, 73d Cong., 2d Sess. 3. Note also the remarks of Senator Dill, Chairman of the Committee on Interstate Commerce, who introduced the bill in the Senate, that the Act would correct the theretofore cursory federal regulation of telephone and telegraph companies. 78 Cong. Rec. 8822.

statute's protection because, as this Court noted in *Weiss*,[15] the intercepter cannot discern between the two and will listen to both. Congress did not intend to place the protections so plainly guaranteed in Section 605 in such a vulnerable position. Respondent points to portions of the Act which place some limited authority in the States over the field of interstate communication. The character of these matters, dealing with aspects of the regulation of utility service to the public, is technical in nature [16] in contrast to the broader policy considerations motivating Section 605.[17] Moreover, the very existence of these grants of authority to the States underscores the conclusion that had Congress intended to allow the States to make exceptions to Section 605, it would have said so. In light of the above considerations, and keeping in mind this comprehensive scheme of interstate regulation and the public policy underlying Section 605 as part of that scheme, we find that Congress, setting out a prohibition in plain terms, did not mean to allow state legislation which would contradict that section and that

---

[15] 308 U. S., at 328.

[16] 47 U. S. C. § 220 (h) allows the Federal Communications Commission to place carriers under state authority in regard to accounting systems and methods of depreciation accounting. See H. R. Rep. No. 1850, 73d Cong., 2d Sess. 7. 47 U. S. C. § 221 (b), as originally enacted, enabled state commissions "to regulate exchange services in metropolitan areas overlapping State lines." S. Rep. No. 781, 73d Cong., 2d Sess. 5; H. R. Rep. No. 1850, 73d Cong., 2d Sess. 7. State authority over intrastate communication is reserved by 47 U. S. C. (Supp. II) § 152 (b), which removes the jurisdiction of the Federal Communications Commission from "charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier." See S. Rep. No. 781, 73d Cong., 2d Sess. 3.

[17] Cf. *Nardone* v. *United States*, 302 U. S. 379; *Nardone* v. *United States*, 308 U. S. 338; *Weiss* v. *United States*, 308 U. S. 321.

policy.[18]   Cf. *Pennsylvania* v. *Nelson,* 350 U. S. 497; *Hill* v. *Florida,* 325 U. S. 538; *Hines* v. *Davidowitz,* 312 U. S. 52.[19]

The judgment is reversed and the cause is remanded to the District Court for further proceedings not inconsistent with this opinion.

*Reversed.*

---

[18] In passing, it should be pointed out that several Attorneys General of the United States have urged Congress to grant exceptions to § 605 to federal agents under limited circumstances.   See, *e. g.,* Hearings before Subcommittee No. 5 of the House Committee on the Judiciary on H. R. 762, 867, 4513, 4728, 5096, 84th Cong., 1st Sess. 28; Rogers, The Case for Wire Tapping, 63 Yale L. J. 792 (1954). But Congress has declined to do so.   In view of this, it would seem unreasonable to believe that Congress is willing to allow this same sort of exception to state agents with no further legislation on its part.

[19] *Schwartz* v. *Texas, supra,* is not to the contrary.   While it refused to overturn a state rule of evidence, the Court was satisfied that the action of the state officials nonetheless violated § 605. 344 U. S., at 202.