Fuld, J. (dissenting).
The Supreme Court declared in the Benanti case that the Federal Communications Act is “a comprehensive scheme ” for the regulation of both interstate and intrastate communications and, in addition, intimated that Congress, by enacting that statute, “and Section 605 in particular,” has exercised its power to forbid wire tapping and prevent a State from authorizing wire tapping even in the *517 exercise of its legitimate police functions. (Benanti v. United States, 355 U. S. 96, 104.) Such language, particularly when considered in light of the authorities cited (355 U. S., at p. 106)—such as Pennsylvania v. Nelson (350 U. S. 497) and Hill v. Florida (325 U. S. 538)—gives me pause as to the correctness of the present holding that the Federal Government has not .fully occupied the field of telephonic communications, including, of course, their interception. And, if Congress “ has taken the particular subject-matter in hand” (Charleston & Car. R. R. v. Varnville Co., 237 U. S. 597, 604), it matters not, contrary to the intimations contained in the court’s opinion (pp. 5091-512), whether the State legislation is in conflict with the Federal law or supplements it. (See, e.g., Pennsylvania v. Nelson, 350 U. S. 497, 504, supra; Southern Ry. Co. v. Railroad Comm., 236 U. S. 439, 448; Erie R. R. Co. v. New York, 233 U. S. 671, 683, revg. 198 N. Y. 369, 381.) Nevertheless, until the Supreme Court has spoken more decisively on the subject, I hesitate to say that Congress has, through section 605, preempted the field so as to supersede and render ineffectual the provisions of this State’s Constitution and Code of Criminal Procedure which authorize wire tapping (N. Y. Const., art. I, § 12; Code Grim. Pro., § 813-a).
I do believe, however, that there should be a reversal of the judgment of conviction and a new trial because of the statements made by the assistant district attorney during his summation, statements by which he made himself “ an unsworn witness * * * supporting his case by his own veracity and position”. (People v. Lovello, 1 N Y 2d 436, 439; see, also, People v. Tassiello, 300 N. Y. 425, 430.) More specifically, the prosecutor told the jurors that, if they believed that he or his associates had “ suppressed ” any evidence, they should “ acquit this man. I am not worthy of standing here before you ”. He compounded the impropriety of this comment by immediately adding that,
“ if they [the witnesses about whose failure to testify defense counsel had commented] had anything to contribute, they would be on that stand here before you. That is my duty, that is my duty to put them there, and if I didn’t do it it is a damnable and shameful and outrageous thing and I should be convicted.”
*518 And, just a few minutes thereafter, the prosecutor again made himself a witness and again placed his own integrity and standing in the balance against the defendant by telling the jury that
“ Then I put Buh on the stand and permitted him to testify that he did not tap those numbers. I am the fellow you should convict if I deliberately permitted that man to commit perjury, knowing it in my heart and my soul ”[1]
All of these summation statements were highly improper and, when the one last quoted evoked a motion for a mistrial, more was required, in order to overcome and eliminate the prejudice which must have resulted, than the trial court’s perfunctory instructions that the jury must rely on the evidence and disregard the comments. (See, e.g., People v. Carborano, 301 N. Y. 39, 42-43; People v. Levan, 295 N. Y. 26, 36.) ‘ ‘ The virus * * * implanted in the minds of the jury ’ ’, we wrote in the Levan case (295 N. Y., at p. 36), “ is not so easily extracted.”
Chief Judge Conway and Judges Dye and Van Voorhis concur with Judge Froessel; Judge Burke concurs in result; Judge Desmond dissents in a memorandum; Judge Fuld dissents in a separate opinion.
Judgment affirmed.