Johh T. Casey, J.
The United States Supreme Court, in Berger v. Neno York (388 U. S. 41) on June 12, 1967, struck down section 813-a of the New York Code of Criminal Procedure which permitted court-authorized eavesdropping. In view of recent trends by that court, the death of the statute was not unexpected. The cause was its violation of the broad interpretation now ascribed to the provisions of the Fourth Amendment of the Constitution of the United States. That Amendment provides: ‘ ‘ The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches *173 and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be .seized. ’ ’
Stating that the New York statute, as written and on “ its face,” permits a trespassory invasion of the home by general warrant and is therefore violative of the Fourth Amendment, the Supreme Court surely and finally interred it in the graveyard of unconstitutionality.
Expressly holding for the first time that the wording of the amendment forbids invasion of privacy by governmental authority, and that evidence thus obtained must be excluded, the court has extended the constitutionally protected area of home and its curtilage to conversations of criminal activity intercepted and seized far from that protected area. To do so, it casts aside, if it does not overrule, its previous decision in Olmstead v. United States (277 U. S. 438) which held that the Fourth Amendment did not proscribe the use of intercepted telephonic conversation without actual unlawful entry upon the premises.
By outlawing our eavesdropping statute on such constitutional grounds, it has further extended its holding in Mapp v. Ohio (367 U. S. 643), which was previously interpreted in New York in People v. Dinan (11 N Y 2d 350), not to prohibit the use of all illegally obtained evidence but only that obtained unconstitutionally by unreasonable search and seizure (which wiretaps, under Olmstead, were formerly held not to be). (Benanti v. United States, 355 U. S. 96.)
Mapp held that evidence that was procured contrary to Federal constitutional standards, as presently interpreted, could not be used in State courts in State prosecutions. Berger casts evidence procured in conformity with a valid and legal State statute (813-a) into the same contaminated pool as evidence garnered from the most illegal source. Given the premise that the source is tainted, it follows that the evidence netted is unfit for use.
There were those who claimed the statute was but wounded and that its wiretapping section would survive. They contended it was ‘ ‘ bugging ’ ’ only that was condemned.
Such contention has proved fruitless. The New York State Court of Appeals, in People v. Grossman, (20 N Y 2d 346) on July 7,1967, acknowledged that Berger held section 813-a of the .Code of Criminal Procedure unconstitutional in its entirety and that evidence procured under the authority of that statute was illegal and, therefore, inadmissible. Grossman further held that the Berger decision was not limited to situations where *174 the police had acted in bad faith or through misconduct, but was made to include those cases where law enforcers performed under valid authority, in conformity with an order of a Supreme Court or County Judge after demonstrating reasonable grounds to believe that evidence of crimes could thus be obtained. To strike our statute as unconstitutional, renders such acts of the police, viewed retrospectively, from the site of Berger, just as illegal as if they had acted under no authority at all.
Both of these cases (Berger and Grossman) are determinative of the motion before this court.
The defendant here, and others who were indicted for gambling and conspiracy to commit gambling, separately, but who joined in this motion, now move for the dismissal of those indictments.
It was conceded by the District Attorney, with commendable candor, on the oral argument of this motion, that the indictments were based on evidence from court-authorized wiretapping orders and that all the evidence of guilt flowed from such source.
The motion made by counsel for the defendant to dismiss the indictment would be premature — compelling, as it does, a determination of the admissibility of evidence pretrial and without utilizing the suppression procedure, were it not for CPLR 4506 which provides that information obtained through impermissible eavesdropping may not be employed for any purpose in any civil or criminal action, proceeding or hearing except in the criminal prosecution of the unauthorized eavesdropper himself. Coupling this statute with section 249 of our Code of Criminal Procedure, (declaring that the Grand Jury can receive none but legal evidence), this court is compelled to conclude that the evidence was illegally procured and inadmissible even for Grand Jury purposes and, therefore, all the indictments of which such evidence is the predicate must be dismissed.
This decision is constrained by the supremacy clause of the United States Constitution binding all Judges by oath to effectuate the decisions of the United States Supreme Court dealing with constitutional questions and regardless of personal views or opinion.
It would be easier to comprehend the Berger holding if there had been a demonstrable showing of gross injustice or indiscriminate abuse of our statute.
New York State was always mindful of individual rights. Wiretapping orders were granted only when necessary and only when the standards of our statute had been met. Unauthorized *175 users faced felony prosecutions. (Penal Law, § 740.) Now it appears that the State, itself, has been penalized for its care and caution, and covered by the same mantle as a State which provided no such procedural safeguards for its citizens.
It is noteworthy that the Berger case preserves the citizens’ privacy of the home and environs only against official authority.
No new or extended penalty is placed upon the law breaker who commits worse offenses against home and citizen. And, while the offender, when apprehended, must answer for his crime, he has the other constitutional privileges, as they are now interpreted, going for him, i.e., the right to counsel from the time he is in custody, the right to be apprised of his right to remain silent and that anything said may be used against him. (Miranda V. Arizona, 384 TJ. S. 436.) He has the right to have his confession (if there is one) tested by a court on its admissibility and then by a jury on its weight (Jackson v. Denno, 378 U. S. 368), and he has the right to remain silent and give no explanation in his defense and no inference of guilt may be inferred. (U. S. Const., 5th Arndt.)
While these constitutional safeguards are extended equally to all citizens, broad interpretation aids the criminal much more than the vast majority of our citizens who have nothing to hide.
Equities must be balanced and I suggest that an overextension of privileges to the law breaker results in a reduction of right to the victims of crimes in particular, and to society in general, in the same proportion.