Chief Judge Fuld (dissenting).
The decision which the court is now making, I suggest, disregards both the holding and the *105 spirit of Berger v. New York (388 U. S. 41). The eavesdropping statute — section 813-a of the Code of Criminal Procedure — held invalid in that case is the very same statute under which the ex parte wiretapping order in the case before us was granted. The Supreme Court there ruled that section 813-a was “ deficient” and unconstitutional “on its face” as an impermissibly broad and sweeping intrusion into the constitutionally protected area of individual privacy (388 U. S., at pp. 44, 55). If this language has any meaning, it is that the statute is invalid in its entirety insofar as it authorizes eavesdropping, whether the particular form of such eavesdropping be “ bugging ” as in Berger or wiretapping as in the present case. Moreover, there cannot be any doubt that the dominant considerations on which the Berger decision was predicated are equally applicable to both of these types of surreptitious interception. In my judgment, it is the impermissible intrusion into the privacy of conversations, not merely an unlawful physical entry, that is and should be proscribed and outlawed. (Cf. Katz v. United States, 369 F. 2d 130, cert, granted 386 U. S. 954.)
The Supreme Court found section 813-a to be constitutionally ‘ ‘ offensive ” in at least four respects. First, it improperly authorized eavesdropping “without requiring belief that any particular offense has been or is being committed ” and, in effect, gives [1] ‘ the officer a roving commission to ‘ seize ’ any and all conversations ” akin to the old repudiated “ general warrant ”. Second, the statute’s “ authorization of eavesdropping for a two-month period [was] the equivalent of a series of intrusions, searches, and seizures pursuant to a single showing of probable cause”. Third, “the statute place[d] no termination- date on the eavesdrop once the conversation sought is seized.” And, fourth, the statute “ ha[d] no requirement for notice as do conventional warrants ” and did not “ provide for a return on the warrant thereby leaving full discretion in the officer as to the use of seized conversations of innocent as well as guilty parties ” (pp. 59-60). “ In short,” the Supreme Court summed up the matter, “the statute’s blanket grant of permission to eavesdrop is without adequate judicial supervision or protective procedures ” (388 U. S., at p. 60).
Quite obviously, the defects which the court pointed to exist whether section 813-a be invoked as authorization for bugging *106 or for wiretapping. In fact, the Supreme Court failed to make any distinction between bugging and wiretapping other than to observe that they were both forms of eavesdropping which developed at different times (388 U. S., at pp. 45-47). The court did, it is true, refer to its 1928 decision in Olmstead v. United States (277 U. S. 438) in which wiretapping, in and of itself, was held outside of the protective ambit of the Fourth Amendment. The court in Berger, however, expressly held that Olmstead was no longer sound law insofar as it differentiated between ‘ ‘ conversation ’ ’ and tangible property. The court thus noted that statements in the Olmstead opinion to that effect had been “ negated ” by later decisions which held that “ the use of electronic devices to capture * * * [‘ conversation ’] was a ‘ search ’ within the meaning of the Amendment ” (p. 51).
Although the court in Berger did not, in so many words, overrule the other basis for the Olmstead decision—that wiretapping did not per se entail a physical invasion of private premises—it is evident from a reading of the Berger opinion that that aspect, too, has little, if any, remaining force. The thrust of the Berger opinion, indeed its underlying theme, was that eavesdropping, the generic term encompassing wiretapping and bugging, is within the ban of the Fourth Amendment not because it may constitute a trespass in the technical sense but because “ [b]y its very nature * * * [it] involves an intrusion on privacy” of unduly broad scope (388 U. S., at p. 56).[1] “ Few threats to liberty exist”, the court declared (p. 63), “which are greater than that posed by the use of eavesdropping devices.” In this regard, it is significant that both Justice Douglas, in concurring (p. 64), and Justice Black, in dissenting (p. 80), regarded the Berger decision as necessarily overruling Olmstead and that Justice White, in his dissent (p. 113), viewed the issues presented as not turning on whether it was bugging or wiretapping which happened to be involved.
*107 Once it be determined that section 813-a of the Code is unconstitutional in its entirety, the impact of Berger may not properly be avoided by holding that it is not to be applied to cases (such as this) which come to our court in the normal course of the appellate process, even though the trials antedated that decision. I can add little to what Judge Christ has so ably stated on the subject in his dissent in People v. Morhouse (21 N Y 2d 66, also decided today). In Berger, the Supreme Court held that evidence obtained pursuant to section 813-a was the product of an illegal search and seizure in violation of the Fourth Amendment, and we have consistently held, with respect to such evidence, that the exclusionary rule announced in Mapp v. Ohio (367 U. S. 643) should be applied “ in our review of pending appeals,” despite the fact that the trials took place before Mapp and were conducted in the light of the law as it then existed. (People v. O’Neill, 11 N Y 2d 148, 152; see, also, People v. Loria, 10 N Y 2d 368, 371; People v. Muller, 11 N Y 2d 154.) In People v. McQueen (18 N Y 2d 337), it is true, the court declined to give retrospective application to the new rules enunciated in Miranda v. Arizona (384 U. S. 436) concerning the use of confessions obtained by police interrogation but we neither held nor intimated that our prior practice in search and seizure cases should be modified. In point of fact, just a few months ago — and, of course, after McQueen (18 N Y 2d 337, supra)—our court in People v. Grossman (20 N Y 2d 346), involving the very statute now before us, wrote that, since Berger had held section 813-a unconstitutional, “ it is as if there had never been any valid authority for the police to act as they did ” (p. 349).[2] To change the practice to the prejudice of the defendants now before us (Kaiser and Morhouse) is highly unfair, if not unconstitutional, smacking as it does of unequal protection of the laws.
Although there may be some situations in which prospective application of a new rule may be dictated by the fact that the police placed "reliance” on old rules or prior decisions, the present is not such a situation. The Supreme Court, it is true, had not previously ruled that evidence obtained by means of *108 wiretapping could not be used in a State court. But it had, repeatedly and for many years, held that the tapping of telephone wires and the disclosure of the contents of the communications intercepted constitute a crime under section 605 of the Federal Communications Act. (See, e.g., Benanti v. United States, 355 U. S. 96, 100.) Manifestly, in such a situation, the prosecution should not be permitted to make the criminal conduct of its agents a basis for a claim of “ reliance ” on the prior state of the law.
As the majority here acknowledges, the order permitting the wiretap in the present case contained many “ defects ” (opn., p. 97) of the kind which the Supreme Court in Berger held to be violative of essential constitutional safeguards. The order broadly authorized the interception and recording of “ all telephone communications made by and to Salvatore Granello, Dino Conte and any and all other persons communicating by both incoming and outgoing calls over the telephone located at 255 W. 43rd Street, New York County, New York * * * [from July 1] until the 29th day of August, 1964.”[3] As is manifest — and I cull from the opinion in Berger (388 U. S., at p. 59)—the effect was to give the officer “ a roving commission ’’, on the order of a general warrant, “to ‘ seize ’ any and all conversations ”. Moreover, the order, as indicated, was to be effective for two months, a length of time expressly condemned by the Supreme Court in Berger; as the court pointed out, ‘‘ authorization of eavesdropping for a two-month period is the equivalent of a series of intrusions, searches, and seizures pursuant to a single showing of probable cause. * * * During such a long and continuous (24 hours a day) period the conversations of any and all persons * * * will be seized indiscriminately and without regard to their connection with the crime under investigation ” (p. 59). And, since its success necessarily depends on secrecy, the procedure authorized by the order has — and I again quote from *109 the Berger opinion (p. 60) —“no requirement for notice as do conventional warrants ” and does not “ provide for a return on the warrant thereby leaving full discretion in the officer as to the use of seized conversations of innocent as well as guilty parties.”
The majority has attempted to overcome the objections voiced in Berger by a suggested retrospective re-interpretation of section 813-a to narrow its unconstitutionally broad reach. As support for this “rehabilitation” of the statute, the majority points to Dombroski v. Pfister (380 U. S. 479). That case, posing an entirely different problem, is wholly inapposite. It involved an excessively broad State statute, regulating speech and expression, which had not yet been construed by the State courts. In upholding the power of a Federal court to enjoin criminal prosecution under that statute so long as its wide reach remained unlimited by construction, the Supreme Court left open the possibility of the State’s obtaining “ an acceptable limiting construction” from the State courts “in a noncriminal proceeding ’’ for the purpose of future prosecutions (380 U. S., at pp. 491, 497). Here, in sharp contrast, the applicable statute had been authoritatively construed by this court in Berger (18 N Y 2d 638) and had, on the basis of that construction, been held unconstitutional on its face by the Supreme Court (388 U. S. 41, supra). I have come on no case, and none has been called to our attention, in which a State court has presumed to resuscitate a statute by a retroactive re-interpretation after the United States Supreme Court had (as it has done here) declared it constitutionally dead.
In any event, though, even if we were to assume that a court has such power, it is impossible to view the majority’s interpretation in this case as “ an acceptable limiting construction”. Thus, the court’s opinion herein does nothing more than to outline, in general terms, the limitations which it proposes to read into the statute, and has apparently left the precise delineation of such limitations to future judicial decision. The Supreme Court in Berger, however, made it plain that it would not uphold any legislation authorizing eavesdropping which did not embody “‘precise and discriminate ’ requirements” sufficient to comply with the strict demands of the Fourth Amendment (388 U. S., at p. 58). The limitations here suggested are entirely too vague and indefinite to satisfy that criterion. Actually, the
*110 proposed “ rehabilitation ” would consist not merely of engrafting on the statute “ a missing constitutional safeguard ”, as was the situation in Matter of Bell v. Waterfront Comm, of N. Y. Harbor (20 N Y 2d 54, 62; see, also, People v. Epton, 19 N Y 2d 496), but of completely rewriting the statutory language and adding, under the guise of construction, matters of detail which are more appropriately left to legislative action.
In this connection, I must say that I do not understand how our court may legitimately fashion a “ procedure ” for wiretapping and for the issuance of orders permitting such wiretapping. The Legislature has outlawed all wiretapping except that authorized by section 813-a (see Penal Law, § 250.00, subd. 3; § 250.05 [formerly §§ 738, 739]) and has expressly provided in CPLR 4506 that evidence obtained by wiretapping (or other eavesdropping) without a court order issued pursuant to that statute, “ shall be inadmissible for any purpose in any civil or criminal action ”. Beyond that, since the revisers of this State’s Code of Criminal Procedure have already drafted and proposed an article (art. 370), to replace section 813-a, which “ precisely set[s] forth the forms and procedures to be followed at each phase of eavesdropping, from application through termination to judicial record-keeping”, and contains “a number of restrictions in the utilization of eavesdropping not previously found in New York law nor specifically called for in the Berger decision,”[4] it seems to me unwise, if not mischievous, for a court to undertake to assume what is a strictly legislative function.
Further, and quite apart from the combined impact of the Berger decision and CPLR 4506, I am more than ever confirmed in the view I expressed in dissent in People v. Dinan (11 N Y 2d 350, 356) that all evidence obtained through wiretapping should be excluded on the ground that its very introduction in open court constitutes a Federal crime in violation of section 605 of the Federal Communications Act. (See, also, *111 People v. McCall, 17 N Y 2d 152, 160, concurring opn.; People v. Cohen, 18 N Y 2d 650, 651, dissenting opn.)
In sum, then, since section 813-a has been invalidated and stricken in its entirety, no authorization existed for the ex parte order permitting wiretapping in this case. Consequently, CPLR 4506 requires the exclusion from evidence of the conversations intercepted by means of such wiretapping.
The judgment appealed from should be reversed and a new trial ordered.
Judges Van Voorhis, Burke, Scileppi, Bergan and Breitel concur with Judge Keating; Chief Judge Field dissents and votes to reverse and order a new trial in a separate opinion.
Judgment affirmed.

. In its discussion of Silverman v. United States (365 U. S. 505), it was pointed out that in that case, “ [s]ignificantly, the Court held that its decision did 'not turn upon the technicality of a trespass * * * as a matter of local law. It is based upon the reality of an actual intrusion into a constitutionally protected area’” (388 U. S., at p. 52).

. The majority avoids this pronouncement by blandly declaring (opn., p. 99 n. 4) that “ [a]ny language in Grossman * * * inconsistent with this opinion is expressly overruled ” !

. The order further provided that the Nassau County District Attorney or his agents were “ authorized and empowered to cut, break, tap, and make connection with any and all wires leading to and from said telephone instrument that the said District Attorney * * * [and a named assistant district attorney] or their agents may deem reasonably necessary to intercept telephone communications transmitted over the said wire”.

. See Proposed New York Criminal Procedure Law (Temporary Commission on Revision of Penal Law. and Criminal Code, 1967), art. 370, p. 401. The Staff Comment recites (p. 402) that “this article provides a comprehensive scheme for the restricted issuance of eavesdropping warrants, based upon strict standards of probable cause and necessity, and demanding scrupulous particularity in the description both of the person and place upon which the eavesdropping is to be conducted and the nature of the evidence sought thereby.”