**UNITED STATES of America**

v.

**John William BUTENKO and Igor A. Ivanov.**

**Crim. No. 418–63.**

United States District Court, D. New Jersey.

Oct. 13, 1970.

Donald Horowitz, Frederick B. Lacey, U. S. Attys., by Jonathan L. Goldstein, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Williams & Connolly, by Robert L. Weinberg, Washington, D. C., for defendant.

## MEMORANDUM

AUGELLI, Chief Judge:

Defendants were convicted of conspiring to transmit to the Soviet Union information relating to the national defense of the United States. The convictions, with one modification,[1] were affirmed by the Court of Appeals. United States v. Butenko, 384 F.2d 554 (3 Cir. 1967).

Following affirmance of the convictions, defendants filed petitions for certiorari in the United States Supreme Court. While the cases were pending in that Court, it was revealed that the United States had engaged in electronic surveillances which might have violated defendants' Fourth Amendment rights and tainted their convictions. A remand to this Court was ordered to determine whether any of the Government's evidence supporting the convictions of defendants was the product of illegal surveillances to which they would have the right to object. See Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L. Ed.2d 176 (1969), which includes the Butenko and Ivanov cases; also, Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); and Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969).

After remand, the United States voluntarily turned over to Ivanov's counsel, subject to a protective order, some of the logs reflecting overhearings of Ivanov's conversations.[2] These logs covered the periods from May 15, 1963 to June 11, 1963, and from June 27, 1963 to August 13, 1963, and are alleged by the Government to be the logs of the surveillance directed against Ivanov. However, the Government has refused to turn over to Ivanov's counsel certain other logs of telephone conversations of Ivanov that were overheard on wiretaps maintained on three separate premises.

The Ivanov logs withheld by the Government have been submitted to the Court for an in camera examination,[3] accompanied by an affidavit of John N. Mitchell, Attorney General of the United States, and a memorandum of law in support of the Government's position that the logs in question should not be disclosed to Ivanov. Copies of the Mitchell affidavit and memorandum of law were furnished to Ivanov's counsel at the same time the withheld material was delivered to the Court. The issue of Ivanov's right to examine these logs, and for an evidentiary hearing with respect thereto, has been extensively argued, and the Court has been favored with briefs which fully explore the question.

Preliminarily, Ivanov contends that there has been an admitted violation of

1. The indictment in this case was in three counts. Count I charged a conspiracy in violation of 18 U.S.C. § 794; Count II, a conspiracy to commit the offense proscribed by 18 U.S.C. § 951, in violation of 18 U.S.C. § 371; and Count III charged Butenko alone with the substantive offense of violating 18 U.S.C. § 951. The modification mentioned in the text was the reversal of Ivanov's conviction on Count II.

2. There is no question of standing in either the case of Ivanov or Butenko. The actual conversations of both defendants were overheard by means of electronic surveillances. In Butenko's case, the United States voluntarily turned over to his counsel, subject to a protective order, all of the logs in its possession relating to that defendant. These logs covered the period from July 17, 1963 to October 30, 1963.

It may be noted here that the defendants were arrested on October 29, 1963. The indictment against them was filed on November 7, 1963, and the conspiracy alleged therein covered the period from April 21, 1963 to and including October 29, 1963. Trial commenced on October 22, 1964 and was concluded on December 2, 1964, with a jury verdict of guilty. Sentences were imposed on December 18, 1964.

3. The logs reflecting the overhead Ivanov conversations and authorizations for the electronic surveillances pursuant to which such surveillances were conducted, were submitted to the Court in sealed envelopes. The overheard conversations are marked Government Exhibits A(1), A(2), and A(3). The authorizations for the surveillances are marked Government Exhibit B.

his Fourth Amendment rights with respect to the logs delivered to the Court for an in camera examination. This is based on an alleged concession of illegality made by the Solicitor General when he argued Ivanov's case before the Supreme Court. See footnote No. 1 of Mr. Justice Stewart's concurring opinion in Giordano v. United States, 394 U.S. 310, 313, 89 S.Ct. 1163. In the argument before this Court, the Government, in response to a request made by Ivanov, admitted that the Ivanov logs turned over for an in camera examination were submitted pursuant to the Supreme Court mandate. Armed with this admission, Ivanov argues that it must be assumed, for the purposes of the present proceedings under the mandate, that the Solicitor General had these very logs in mind when he made his alleged concession of illegality, and that, having made such concession in the Supreme Court, the Government should not be permitted to repudiate that concession in this Court. The Government denies that any concession of illegality was made or intended.

■ This Court does not believe that the record, when viewed as a whole, and especially in light of the posture of the case when it was argued before the Supreme Court, supports Ivanov's contention that the Solicitor General made a binding concession (such as would preclude a determination of the issue here) that the logs of the overheard Ivanov conversations submitted for an in camera examination were, in fact, illegal. In connection with this it should be noted that the Solicitor General's argument was made pursuant to grants of certiorari which limited the questions to be considered by the Supreme Court on the assumption that the surveillances were illegal. See footnotes Nos. 3 and 4, Alderman v. United States, 394 U.S. 165, 170, 89 S.Ct. 961. In any event, the fact remains that the Supreme Court not only declined to accept the Solicitor General's proffered concession of illegality (footnote No. 1 in Giordano v. United States, 394 U.S. 310, 314, 89 S.Ct. 1163), but

remanded the case to this Court for the express purpose of determining whether the challenged surveillances were legal or illegal. The directions of the mandate are controlling and must be followed.

Ivanov argues that if this Court does not accept the alleged concession of illegality made by the Solicitor General, the Government should nevertheless be directed to turn over to him for examination the withheld material, following which the Court should hold an evidentiary hearing in order to determine whether there has been a violation of his rights under the Fourth Amendment or Section 605 of the Federal Communications Act of 1934, 47 U.S.C. § 605.

The Government argues to the contrary, and claims that an in camera examination of the logs reflecting the overhearings of Ivanov's conversations will establish that the surveillances were not directed against him, but that such overhearings occurred in the course of electronic surveillances expressly authorized by the Attorney General for the sole purpose of gathering foreign intelligence information, and that, such being the case, the surveillances were legal. It is also argued that a determination of the legality of the surveillances can and should be made in camera, and that a determination of legality would make unnecessary a disclosure of the withheld material or further proceedings in connection therewith.

■ In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, the Supreme Court held that the Government must disclose and make available to a defendant any conversations he participated in or that occurred on his premises which the Government overheard during the course of any illegal electronic surveillance. In his concurring opinion in Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, Mr. Justice Stewart pointed out that Alderman required disclosure only where the surveillance was illegal, and that a finding by the District Court that the surveillance was lawful would make disclosure and further proceedings

unnecessary. As to the procedure to be followed in making a determination of the legality of a challenged surveillance, Justice Stewart, at page 314, 89 S.Ct. at page 1165, said:

"We have nowhere indicated that this determination cannot appropriately be made in *ex parte, in camera* proceedings. 'Nothing in Alderman v. United States, Ivanov v. United States, or Butenko v. United States, * * * requires an adversary proceeding and full disclosure for resolution of every issue raised by an electronic surveillance.' Taglianetti v. United States, [394 U.S. 316, 89 S.Ct. 1099]."

■ It thus becomes apparent that the initial determination to be made is whether, under the facts of this case, the Ivanov surveillances were illegal and in contravention of his rights under the Fourth Amendment or Section 605 of the Communications Act of 1934. The Court is satisfied that this determination may be made in camera. See United States v. Clay, 430 F.2d 165 (5 Cir. 1970).

At the outset, it should be noted that while the Ivanov surveillances were conducted prior to the decision in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Government does not rely on pre-Katz law, such as that set forth in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). The position of the Government, simply stated, is that electronic surveillances authorized by the President for the sole purpose of gathering foreign intelligence information, are not violative of the Fourth Amendment or Section 605 of the Communications Act of 1934. The validity of the Government's position on this issue, under the Fourth Amendment, has not yet

been decided by the Supreme Court. See footnote No. 23 in Katz, 389 U.S. 347, 358, 88 S.Ct. 507. In that same case, however, Mr. Justice White, after noting that Katz did not reach national security cases, stated, at pages 363–364, 88 S.Ct., at page 518:

"Wiretapping to protect the security of the Nation has been authorized by successive Presidents. * * * We should not require the warrant procedure and the magistrate's judgment if the President of the United States or his chief legal officer, the Attorney General, has considered the requirements of national security and authorized electronic surveillance as reasonable." [4]

The affidavit of the Attorney General, submitted in opposition to the disclosure of information concerning the overhearings of certain conversations of Ivanov, reveals that on various dates between 1962 and December 2, 1964, the date of Ivanov's conviction, telephone conversations in which Ivanov participated were overheard by Government agents. It is stated that such overhearings occurred while the agents were conducting electronic surveillances "solely for the purpose of gathering foreign intelligence information", and that "the overhearings occurred on wiretaps maintained on three separate premises." It is further stated "that neither the defendant Ivanov nor any premises in which he had an interest was the subject of the surveillances and that the surveillances were being conducted to gather foreign intelligence information." The statement is then made "that the installation of each of the three surveillances involved was expressly approved by the then Attorney General of the United States." In concluding his affidavit, the Attorney

---

4. Mr. Justice Douglas and Mr. Justice Brennan, both of whom also concurred in the Katz opinion, disagreed with the view expressed by Mr. Justice White with respect to wiretapping in national security cases. This disagreement was noted by Mr. Justice Stewart in Giordano v. United States, 394 U.S. 310, 315, 89 S.Ct. 1163.

Thus, the issue remains open under the Fourth Amendment, and it is assumed, although no reference thereto has been made in Giordano, that the legality of foreign intelligence wiretaps under Section 605 of the Communications Act is also an open question.

General certifies "that it would prejudice the national interest to disclose the particular facts concerning these surveillances other than to the court *in camera*."

The Court has made an in camera examination of Government Exhibits A(1), A(2) and A(3), being copies of the logs reflecting the overheard Ivanov conversations and has noted the description and location of the premises which were the subject of the surveillances. Such examination supports the statement made by the Attorney General "that neither the defendant Ivanov nor any premises in which he had an interest was the subject of the surveillances and that the surveillances were being conducted to gather foreign intelligence information." It also appears, from an examination of Government Exhibit B, that the surveillances were expressly authorized by the Attorneys General then in office.

▉ With this background, consideration will now be given to Ivanov's claim that his Fourth Amendment rights were violated. That Amendment, of course, proscribes only unreasonable searches and seizures. This poses the question then, of whether, absent a search warrant, it was reasonable, under the circumstances disclosed by the material submitted to the Court for an in camera examination, for the Government to conduct and maintain the challenged surveillances. The legitimate needs of law enforcement will, under certain circumstances, justify an exception to the general warrant requirements of the Fourth Amendment. See Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Camara v. Municipal Court, 387 U.S. 523, 78 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

On the basis of the present record, it cannot be said that it was unreasonable in this case to proceed without a warrant. The very nature of the operation here involved, and the objective sought to be accomplished thereby, would certainly seem to justify an exception to the warrant requirements of the Fourth Amendment. It is undisputed, as stated by Mr. Justice White in Katz, 389 U.S. 347, 363, 88 S.Ct. 507, that wiretapping to protect the national security has been authorized by successive Presidents.[5]

As long ago as 1803, Chief Justice Marshall, in Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 165, 2 L.Ed. 60, pointed out that:

"By the constitution of the United States, the president is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character, and to his own conscience."

▉ Of course, it is recognized that in the exercise of his powers, the President must act in accordance with the applicable provisions of the Constitution. In Totten v. United States, 92 U.S. 105, 23 L.Ed. 605 (1875), the Supreme Court expressly recognized the President's power to employ agents to gather intelligence information. Such power is derived from the Constitution itself, and is not dependent upon any grant of legislative authority conferred upon the President by Congress. See Chicago & Southern Air Lines, Inc. v. Waterman S. S. Corp., 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948); United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 319–320, 57 S.Ct. 216, 81 L.Ed. 255 (1936). In the Chicago & Southern Air Lines case, supra, which involved the President's award of international airline routes, the Supreme Court said, at

---

5. This Court, as well as counsel for Ivanov, has been furnished with copies of President Roosevelt's memorandum to Attorney General Jackson empowering him to authorize the use of wiretaps in matters involving the defense of the nation; President Truman's concurrence of Attorney General Clark's request that the Roosevelt directive should be continued in force; and President Johnson's memorandum relating to the use of wiretaps. This material has been placed in the envelope containing Government Exhibit B.

page 111 of 333 U.S., page 436 of 68 S. Ct.:

"The President, both as Commander-in-Chief and as the Nation's organ for foreign affairs, has available intelligence services whose reports are not and ought not to be published to the world. It would be intolerable that courts, without the relevant information, should review and perhaps nullify actions of the Executive taken on information properly held secret. Nor can courts sit *in camera* in order to be taken into executive confidences. But even if courts could require full disclosure, the very nature of executive decisions as to foreign policy is political, not judicial. Such decisions are wholly confided by our Constitution to the political departments of the government, Executive and Legislative. They are delicate, complex, and involve large elements of prophecy. They are and should be undertaken only by those directly responsible to the people whose welfare they advance or imperil. They are decisions of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and which has long been held to belong in the domain of political power not subject to judicial intrusion or inquiry."

■ The same factors that precluded judicial review in Chicago & Southern Air Lines, would certainly be applicable to a situation such as we have here, where the Attorney General, acting as the President's alter ego, authorizes the use of electronic surveillances for the purpose of gathering foreign intelligence information. It is obvious that in making a determination to use wiretapping in a particular case, the President or the Attorney General must make a judgment based on foreign policy considerations. It would be unrealistic to impose upon a judicial officer the burden of deciding what does or does not constitute a threat to our national security. That decision should be left with the executive branch of the Government, which alone possesses the necessary expertise and factual data to assess the reasonableness of electronic surveillances in any given case and the need therefor.

■ Based on its in camera examination of Government's Exhibits A(1), A(2), A(3) and B, this Court finds:

1. that the surveillances here under attack were expressly authorized by the Attorneys General shown in the exhibits;

2. that they were not made pursuant to a surveillance of the defendant Ivanov;

3. that said surveillances were directed against certain premises in which Ivanov had no interest, the description and location of said premises being set forth in the exhibits;

4. that said surveillances were conducted and maintained solely for the purpose of gathering foreign intelligence information;

5. that it was reasonable and necessary to authorize such surveillances in the national interest; and

6. that it would prejudice the national interest to make a disclosure of the particular facts concerning said surveillances.

In sum, the Court concludes that the challenged surveillances were lawful and not in violation of any Fourth Amendment rights of Ivanov. Therefore, no disclosure need be made. For a case denying disclosure of a withheld wiretap log, after an examination thereof in camera, see United States v. Clay, 430 F.2d 165 (5 Cir. 1970).

The next point made by Ivanov is that the challenged surveillances violated Section 605 of the Communications Act. That statute prohibits the interception and divulgence or publication of wire or radio communications without the authority of the sender. In support of his argument that the statute was violated, Ivanov cites the two cases of Nardone v. United States, reported in 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937) and 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); also, United States v. Coplon,

---

185 F.2d 629 (2 Cir. 1950); Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957); Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed. 1166 (1968).

Reliance on those cases, however, is misplaced. None of them involved a consideration of the President's power to gather foreign intelligence information. Indeed, the Coplon case, on which Ivanov so heavily relies, recognizes "that there may be evidence—'state secrets'—to divulge which will imperil 'national security'; and which the Government cannot, and should not, be required to divulge." 185 F.2d 629, 638.

█ As stated earlier in this memorandum, the finding of this Court is that the surveillances were conducted solely for the purpose of gathering foreign intelligence information. In operating in this area, the President is exercising his powers as Commander-in-Chief of our armed forces and as the Nation's sole organ in the field of foreign affairs to gather information he deems essential to protect the national security interest. That the Communications Act of 1934 was not intended to limit or interfere with the President's prerogative of obtaining foreign intelligence information is evident from a reading of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2511(3). It is therein provided that:

"Nothing contained in this chapter or or in section 605 of the Communications Act of 1934 * * * shall limit the constitutional power of the President to take such measures as he deems necessary to protect the Nation against actual or potential attack or other hostile acts of a foreign power, to obtain foreign intelligence information deemed essential to the security of the United States, or to protect national security information against foreign intelligence activities. Nor shall anything contained in this chapter be deemed to limit the constitutional power of the President to take such measures as he deems necessary to protect the United States against the overthrow of the Government by force or other unlawful means, or against any other clear and present danger to the structure or existence of the Government. The contents of any wire or oral communication intercepted by authority of the President in the exercise of the foregoing powers may be received in evidence in any trial hearing, or other proceeding only where such interception was reasonable, and shall not be otherwise used or disclosed except as is necessary to implement that power."

In the Senate Report (No. 1097) on the Omnibus Crime Control and Safe Streets Act of 1968, 2 U.S.Code Cong. and Adm.News, page 2156 (1968), the statement is made that:

"It is obvious that whatever means are necessary should and must be taken to protect the national security interest. Wiretapping and electronic surveillance techniques are proper means for the acquisition of counter-intelligence against the hostile action of foreign powers. Nothing in the proposed legislation seeks to disturb the power of the President to act in this area. Limitations that may be deemed proper in the field of domestic affairs of a nation become artificial when international relations and internal security are at stake."

It thus appears that when Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act, it expressly recognized the existence of the President's power to gather foreign intelligence information, and made it clear that Section 605 of the Communications Act of 1934 did not limit that power. As the Government points out, the Executive Branch has consistently taken the position that wiretapping for intelligence purposes did not violate Section 605. This is supported by the Presidential directives mentioned in footnote No. 5 of this memorandum and the authorizations of the Attorneys General contained in Exhibit B.

74

There is no reason to doubt the good faith of the representations made by the Attorney General in his affidavit that the surveillances in this case were made for the sole purpose of gathering foreign intelligence information, and that a disclosure thereof would prejudice the national interest. The Court concludes from its examination of the material submitted for an in camera examination that the surveillances here challenged were in fact conducted and maintained for the sole purpose of gathering foreign intelligence information, and that each of them was expressly authorized for that purpose by the Attorney General then in office. Being limited for such purpose, this Court holds that Section 605 of the Communications Act of 1934 does not apply to the situation disclosed by the withheld material. As was stated by the Court of Appeals in United States v. Clay, 430 F.2d 165, 172 (5 Cir. 1970):

> "No one would seriously doubt in this time of serious international insecurity and peril that there is an imperative necessity for obtaining foreign intelligence information, and we do not believe such gathering is forbidden by the Constitution or by statutory provision, including 47 U.S.C. § 605."

On this phase of the case, the Court holds that surveillances conducted for the sole purpose of gathering foreign intelligence information are not violative of Section 605 of the Federal Communications Act of 1934.

A final argument made by Ivanov is that a disclosure of the withheld material might reveal the existence of attorney-client communications which would be violative of Ivanov's Sixth Amendment rights. An examination of the logs in camera shows no such communications.

In his affidavit, Attorney General Mitchell has requested this Court to re-seal the exhibits submitted for an in camera examination and return them to the Department of Justice "where they will be retained under seal so that they may be submitted to any appellate court that may review this matter." The Court prefers to retain possession of the exhibits. They are, therefore, being filed with the Clerk, properly sealed, with an appropriate notation that the material may be examined only by this Court or the Court of Appeals.

For all of the reasons set forth herein, the application of the defendant Ivanov for a disclosure of the logs submitted for an in camera examination, and for an evidentiary hearing with respect thereto, will be denied. Counsel for the Government, on notice to counsel for Ivanov, will please submit an appropriate order.