(January 18, 1985)

■ In the Matter of NEW YORK CITY HUMAN RESOURCES ADMINISTRATION, DEPARTMENT OF SOCIAL SERVICES, Petitioner, and NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES, Petitioner-Intervenor, v JOAN B. CAREY, Respondent, and ANDRES DELGADO, Respondent-Intervenor. — CPLR article 78 petition in the nature of a writ of prohibition, dated July 5, 1984, is unanimously granted on the law, without costs, the order of Supreme Court, New York County (Joan B. Carey, J.), dated June 29, 1984, is vacated as being made in excess of jurisdiction, the defendant Delgado is, *nunc pro tunc,* declared to be incompetent to stand trial within the meaning of CPL 730.10 and he is committed to the custody of the New York State Commissioner of Mental Health, pursuant to CPL 730.50.

The underlying action is the criminal prosecution of defendant Delgado for arson in the third degree. After his arrest on January 3, 1984, for allegedly starting a fire in a city-owned vacant building, defendant was interviewed by an attorney from the Legal Aid Society who discovered that Delgado "could only respond to spoken language in seemingly random grunts and noises." Attempts to communicate in writing and by sign language also proved futile upon even the most primitive level. Counsel moved, pursuant to CPL 730.30, for an examination and evaluation of defendant to determine whether he was legally competent to stand trial. Thereafter the People filed an indictment charging Delgado with arson in the third degree (Penal Law, § 150.10).

On February 10, 1984 defendant appeared with counsel for arraignment. Unable to communicate with Mr. Delgado, and thus unable to arraign him, the court ordered a CPL article 730 examination and also appointed a forensic clinical social worker to assist the court as its own expert. Defendant was evaluated by two psychiatrists and the social worker, all three of whom agreed that Mr. Delgado was an incapacitated defendant in that he could neither appreciate the nature of the charges against him nor cooperate in his defense. While all three agreed that defendant was unable to communicate anything other than the most rudimentary concepts (pain, hunger) the social worker did

not join in the psychiatrists' conclusion that, "as the result of mental disease or defect [defendant does] lack the capacity to understand the proceedings against him and/or to assist in his own defense and, that he is, therefore, an incapacitated defendant."

Instead, the social worker maintained that since his massive hearing defect was the base reason for Mr. Delgado's incapacity, such a physical impairment did not come within the meaning of article 730. Unhappily, the court was taken in by this semantic niggling, with these proceedings dragging along for months while the social worker "studied" Mr. Delgado and attempted to negotiate a placement in a New York City funded facility.

On May 2, 1984, defendant, by his attorney, secured an order to show cause along with his petition, seeking release or a declaration of his status and the inability of the State to render him fit to proceed. The petition expressed the view that, given the physical rather than psychiatric defect in defendant's capacities, it would be beyond the authorization of article 730 to commit Mr. Delgado to the Commissioner of Mental Health, in violation of defendant's constitutional rights. (Cf. *Jackson v Indiana,* 406 US 715, 738.)

A hearing was held on two dates. A number of State and city agencies were named in the petition, including the City Human Resources Administration (HRA). HRA moved to dismiss the petition as against it, but participated in the hearing without prejudice to its claim that the court had no jurisdiction over it.

Initially, the court confirmed the finding that Mr. Delgado was incompetent to stand trial. So far as we can perceive from the record, however, the court then departed from the statutory mandate and concluded that article 730 did not apply as defendant's defect was a physical incapacity. The court further indorsed the opinion of the social worker by ordering placement, by HRA and New York State's Department of Social Services, in a group home for the deaf. Of course, nothing in article 730 authorizes jurisdiction over New York City agencies, but the court was seemingly swayed by the social worker's view that the State does not operate any facility appropriate for placement of Mr. Delgado. The lower court justified its action upon its equitable jurisdiction and the United States Supreme Court's decision in *Jackson v Indiana (supra).*

An interim stay of that June 27, 1984 order was granted by this court, with HRA filing this petition for a writ of prohibition. Subsequently, on August 27, 1984, upon a writ of habeas corpus, defendant's custody was ordered transferred to the New York State Office of Mental Retardation and Development Disabilities (OMRDD).

Although this last order effectively moots the practical concerns of petitioner, we must vacate the order complained of and clear up the abiding questions regarding defendant's status and the criminal charges pending against him.

CPL 730.50 (subd 1) commands that, "When a superior court, following a hearing * * * is satisfied that the defendant is not an incapacitated person, the criminal action against him must proceed. If it is satisfied that the defendant is an incapacitated person * * * it must adjudicate him an incapacitated person, and must issue a final order of observation or an order of commitment * * * When the indictment charges a felony * * * it must issue an order of commitment committing the defendant to the custody of the commissioner for care and treatment in an appropriate institution for a period not to exceed one year from the date of such order".

It seems quite obvious that this defendant, certified incapacitated by two psychiatrists, is unable to stand trial upon the arson charge. He is clearly "a defendant who as a result of mental * * * defect lacks capacity to understand the proceedings against him or to assist in his own defense." (CPL 730.10, subd 1.) The statute is broadly stated but unambiguous. It does not parse the word "defect" so as to distinguish between the innumerable sources of disability, once found. Since no evidence was presented at the hearing to discredit and overrule these psychiatric evaluations, the court erred in not following the mandates of the statute.

Lastly, we note that some seven months have elapsed since the lower court's order, and five months since the order transferring custody to OMRDD. In vacating the June 29, 1984 order and substituting another in its stead, we do so, *nunc pro tunc,* with the expectation that the State Commissioner may, with all deliberate swiftness, proceed to institute such action or actions, as authorized by CPLR article 730, as are necessary to ensure the welfare of Mr. Delgado and the disposition of the criminal charge against him. Concur — Murphy, P. J., Sullivan, Ross and Carro, JJ.