736 F.Supp. 496 (1990)
AMERICAN TELEPHONE AND TELEGRAPH CO., Plaintiff,
v.
The NEW YORK CITY DEPARTMENT OF HUMAN RESOURCES and The City of New York, Defendants.
No. 89 Civ. 4569 (PKL).
United States District Court, S.D. New York.
May 2, 1990.
*497 Kellner, Chehebar & Deveney, New York City (John P. Deveney, of counsel), for plaintiff.
Peter L. Zimroth, Corp. Counsel of the City of New York, New York City (Barbara L. Yessel, David A. Bagley, of counsel), for defendants.

ORDER & OPINION
LEISURE, District Judge:
Plaintiff American Telephone and Telegraph Company ("AT & T") brought suit against defendants New York City Human Resources Administration ("HRA") and the City of New York (the "City") under the Federal Communications Act, 47 U.S.C. § 151 et seq. (the "Communications Act"), for long-distance telephone charges allegedly incurred by telephone numbers subscribed to by HRA. Plaintiff AT & T claims that it is owed approximately $529,000 from HRA for Long Distance Message Telecommunications Services ("LDMTS") provided by AT & T. Defendants have filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Defendants claim that HRA lacks the legal capacity to be sued. Defendants also argue that AT & T has not fulfilled the notice of claim requirements set out in the New York Administrative Code § 7-201. AT & T has filed a cross-motion to amend its complaint in order to come into compliance with § 7-201 of the Administrative Code.

BACKGROUND
During the period from July through September 1987, approximately $529,000 in LDMTS charges were incurred by telephone numbers subscribed to by HRA. These charges were billed to HRA during August and September 1987 by New York Telephone Company on behalf of AT & T. The calls were primarily placed to foreign countries such as Pakistan, Colombia and the Dominican Republic. HRA refused to pay the amount, and New York Telephone Company referred the claim to AT & T for collection. In August 1988, HRA filed a formal complaint before the Federal Communications Commission ("FCC") in an attempt to obtain a credit for the allegedly fraudulent use of its telephone accounts. See Ex. B to the Affidavit of John P. Deveney, Esq., sworn to on November 3, 1989 ("Deveney Aff."). In early 1989, over the objection of AT & T, HRA withdrew its complaint without prejudice, stating that "it would be preferable to attempt to resolve this matter without litigation." See Ex. F and G to Deveney Aff.
On June 30, 1989, AT & T filed the pending action against HRA. By letter dated July 31, 1989, the Corporation Counsel notified AT & T that in its opinion, HRA lacked the legal capacity to be sued, and suggesting that the City be added as a defendant in the action. Ex. H to Deveney Aff. On August 9, 1989, AT & T filed an amended complaint adding the City as a *498 defendant. On October 13, 1989, defendants filed their motion to dismiss or for summary judgment, alleging that a notice of claim had not been properly filed by AT & T. On November 3, 1989, AT & T filed a formal notice of claim with the Comptroller of the City and the Corporation Counsel. AT & T subsequently filed a cross-motion to amend the complaint to reflect the formal filing of a notice of claim.

DISCUSSION

A. HRA as a Suable Entity
Defendants argue that the complaint should be dismissed against HRA, as HRA is a subdivision of the New York City government and lacks the capacity to be sued. The parties do not present, nor can the Court find, any caselaw or other authority specifically ruling on this question. The parties do not dispute that government agencies and subdivisions possess only the powers conferred on them by legislative or executive grant. See Yonkers Commission on Human Rights v. City of Yonkers, 654 F.Supp. 544, 551-52 (S.D.N.Y.1987); 26 N.Y.Jur.2d Counties, Towns, and Municipal Corporations § 630, at 304. Similarly, the parties do not dispute that Executive Order No. 82, dated April 26, 1985, which created HRA, does not grant HRA either the power to sue or to be sued. See Ex. C to Affidavit of Barbara L. Yessel, Esq., sworn to on October 12, 1989 ("Yessel Aff."). Plaintiff argues, however, that HRA's appearance in past state court litigations, and its filing of a formal complaint before the FCC in the pending dispute and subsequent participation in settlement negotiations on its own behalf, prevent it from raising a lack of capacity defense at this time under the doctrine of equitable estoppel.
The New York Court of Appeals has "frequently reiterated that estoppel is unavailable against a public agency." Granada Buildings, Inc. v. City of Kingston, 58 N.Y.2d 705, 708, 458 N.Y.S.2d 906, 907, 444 N.E.2d 1325, 1326 (1982) (citing Public Improvements, Inc. v. Board of Education of the City of New York, 56 N.Y.2d 850, 852, 453 N.Y.S.2d 170, 171, 438 N.E.2d 876, 877 (1982)). "The doctrine of estoppel is not applicable to the State acting in a governmental capacity." Hamptons Hospital & Medical Center v. Moore, 52 N.Y.2d 88, 93, 436 N.Y.S.2d 239, 241, 417 N.E.2d 533, 535 (1981) (citing 21 N.Y.Jur. Estoppel § 76, at 110).[1] For this reason, the Court rules that HRA's participation in past litigations, and its participation in administrative proceedings before the FCC, should not prevent it from successfully moving for dismissal based on its lack of capacity to be sued. HRA's past appearances in courts are insubstantial and do not mandate a finding that HRA now possesses the capacity to be sued.[2]

*499 B. Applicability of Notice of Claim Statute

The central dispute in the pending motion is whether the notice of claim requirement of the New York Administrative Code § 7-201 applies in actions brought solely pursuant to a federal statute, the Communications Act, 47 U.S.C. § 151 et seq. The City[3] claims that the Communications Act has not preempted state law in its entirety, and that since the notice of claim requirement does not unduly interfere with a uniquely federal right, AT & T should be required to file a notice of claim prior to commencing a federal court action against the City or one of its agencies. AT & T contests the City's legal analysis, arguing that the question is not one of preemption of state law, but rather whether a federal court should adopt a state law due to a perceived deficiency in the federal statutory framework.
Section 7-201 of the New York Administrative Code provides in part as follows:
Actions against the City.
a) In every action or special proceeding prosecuted or maintained against the city, the complaint or necessary moving papers shall contain an allegation that at least thirty days have elapsed since the demand, claim or claims, upon which such action or special proceeding is founded, were presented to the comptroller for adjustment, and that the comptroller has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment....
Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action. See Murray v. LeRoy Central School District, 67 N.Y.2d 775, 500 N.Y.S.2d 643, 491 N.E.2d 1100 (1986) (applying § 3813 of the Education Law); Chinatown Apartments, Inc. v. New York City Transit Authority, 100 A.D.2d 824, 825, 474 N.Y.S.2d 763, 765 (1st Dep't 1984) (citing Republic of Argentina v. City of New York, 25 N.Y.2d 252, 265, 303 N.Y.S.2d 644, 652-53, 250 N.E.2d 698, 706-07 (1969)) (applying § 394 a-1.0 of the New York Administrative Code, the predecessor section to § 7-201).
Unlike a statute of limitations or other notice of claim provisions, § 7-201 does not prescribe a time limit after the alleged injury within which the putative plaintiff must file his notice.[4] It may be assumed, therefore, that the policy consideration behind § 7-201 is to provide for a period during which a settlement may be negotiated without having to resort to litigation, rather than to preserve the freshness of claims by notification soon after the claim arises.
When a complaint based on federal law is filed in federal court, the court may consider whether to borrow from state law due to deficiencies in the federal statutory scheme. See Brown v. United States, 742 F.2d 1498, 1503-04 (D.C.Cir.1984). Before deciding whether borrowing is necessary, the court must determine that the federal statute in question is deficient in a manner which jeopardizes protection of the federal right. See id. Only when a finding of deficiency has been made will the court decide on the appropriateness of borrowing state law. Although courts are reluctant to create federal common law, it is necessary to do so if the use of state law would be inconsistent with or frustrate the purposes of the federal statute, or for the sake of national uniformity in the application of federal law. See United States v. Little Lake Misere Land Co., 412 U.S. 580, 593-94, 93 S.Ct. 2389, 2402-03, 37 L.Ed.2d 187 (1973) (citing Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943)).
*500 In the context of considering whether to apply a notice of claim requirement to a § 1983 suit brought in federal court, the District of Columbia Circuit Court stated:
As this overview of borrowing doctrine shows, the issue presented by the doctrine is neither how to incorporate into federal law as much state law as a federal action will tolerate, nor how best to further state policies and goals in the litigation of a federal action. The issue is how to best effectuate the federal policies embodies in a federal action when the action does not itself supply the complete legal framework necessary to the effectuation of those policies. Because the practice of borrowing presupposes a need to fill a deficiency in the federal scheme, a court must first look to see if there is indeed such a deficiency.
Brown v. United States, supra, 742 F.2d at 1504 (citing Cohen v. Board of Education, 536 F.Supp. 486, 493-95 (S.D.N.Y. 1982)). The use of state law in federal statutory actions brought in federal court is to avoid the creation of federal common law whenever possible.[5] If the federal statute stands on its own, however, and contains all the needed mechanisms to guarantee its effectiveness in forwarding the underlying federal policy, then no "deficiency" exists, and no borrowing is needed.
In Brown v. United States, supra, 742 F.2d 1498, the D.C. Circuit Court held a local notice of claim provision inapplicable to a suit brought pursuant to 42 U.S.C. § 1983 in federal court. The court ruled that the absence of a notice of claim provision in the federal statutory scheme was not a deficiency which necessitated the borrowing of state law in order to effectuate the federal purpose. Id. at 1504. The court distinguished notice of claim statutes from other procedural or quasi-procedural rules, such as statutes of limitation, which are "generally understood to be essential to a fair scheme of litigation." Id. at 1506.[6] Thus, while a federal statute without a limitations period may be termed "deficient," thereby requiring either the borrowing of state law or the creation of federal common law, the absence of a notice of claims provision will in most cases not render the federal statute deficient.[7]
*501 The applicability of deficiency analysis is often obscured in judicial opinions. For example, in the context of ruling whether to borrow a state statute of limitations period for a federal cause of action, courts will often proceed straight to deciding whether the state statute of limitations interferes with the federal right, without explicitly stating that the federal statute is deficient for want of a statute of limitations. See Johnson v. Railway Express Agency, 421 U.S. 454, 462-66, 95 S.Ct. 1716, 1721-23, 44 L.Ed.2d 295 (1975). It is clear, however, that a finding of deficiency is presupposed.[8]
The City argues that the analysis set out in Brown v. United States should be followed only when a "uniquely federal" remedy, such as § 1983, is at issue. The Court appreciates the sensitivity of courts in interpreting § 1983 in order to guarantee the effectiveness of the federal interests contained in that statute. However, the Court believes that the legal analysis employed by the D.C. Circuit Court in Brown v. United States is correct and appropriate for application in the pending motion. The Court has found no authority which mandates the use of a different analysis for federal statutes which are not "uniquely federal." Therefore, this Court must consider whether the Communications Act is deficient in not containing a notice of claims provision, and if so, whether this Court should borrow the rule set out in § 7-201 of the New York Administrative Code.
The Communications Act of 1934 is "a comprehensive scheme for the regulation of interstate communication." Benanti v. United States, 355 U.S. 96, 104, 78 S.Ct. 155, 159, 2 L.Ed.2d 126 (1957). The Act was passed in response to "the disjointed exercise of federal authority over the forms of interstate communication," and to create a commissionthe FCCwhich would oversee federal regulation and consider new legislation. Id. at 104 n. 14, 78 S.Ct. at 160 n. 14. "`Questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications services are to be governed solely by federal law and ... the states are precluded from acting in this area.'" Nordlicht v. New York Telephone Co., 799 F.2d 859, 862 (2d Cir. 1986) (quoting Ivy Broadcasting Co. v. American Tel. & Tel. Co., 391 F.2d 486, 491 (2d Cir.1968)). "`Where ... the Communications Act itself ... [does not] deal[] with a particular question, the courts are to apply a uniform rule of federal common law.'" Id. (quoting Ivy Broadcasting, supra, 391 F.2d at 491).
The Communications Act is not deficient for want of a notice of claims provision. The statute as applied in this case creates a comprehensive and self-contained system through which interstate telephone and telegraph companies can collect charges from their customers. Because the statute functions independently, and properly guarantees the federal rights which it was designed to create and protect, the Court need not consider whether any state law applies. It is noteworthy, however, that the policy objectives underlying New York Administrative Code § 7-201 will be consistently fulfilled in circumstances such as the case at bar. The Court cannot conceive of a situation where a state subdivision in the position of HRA would not have actual notice of phone charges claimed against it *502 through the carrier's standard billing process, and thereby be in a position to engage the carrier in pre-litigation settlement discussions. In this context, a notice of claims provision such as § 7-201 becomes a mere formality whose functional purpose is lost.[9]

CONCLUSION
Defendant HRA's motion to dismiss the complaint against it based on its lack of capacity to be sued is granted. Defendant the City of New York's motion to dismiss the complaint against it for plaintiff's failure to file a notice of claim is denied. Plaintiff's cross-motion to amend the complaint is denied as moot. The parties are required to appear at a status conference before the Court at 10:30 a.m. on Friday, July 13, 1990, in Courtroom 36, United States Courthouse, New York, New York.
SO ORDERED.
NOTES
[1] The cases establishing this principle concern the ability of government agencies to reconsider prior administrative and policy decisions. See Granada Buildings, supra, 58 N.Y.2d at 707-08, 458 N.Y.S.2d at 907, 444 N.E.2d at 1326 (allowing City of Kingston to redefine the plaintiff property owner as not qualifying for tax exemptions as a "redevelopment company"); Hamptons Hospital, supra, 52 N.Y.2d at 93-94, 436 N.Y.S.2d at 241-42, 417 N.E.2d at 535-36 (after allowing the Public Health Council to "re-evaluate the question of public need" in deciding on the establishment of a hospital, the court stated that "[i]t would be unthinkable that the council through mistake or otherwise could be estopped from discharging the responsibility vested in it by legislative enactment."). Similarly, HRA's decisions to participate in past litigations, perhaps mistakenly made, do not vitiate the legal reality that HRA lacks the capacity to sue or be sued. The Court does not believe that HRA's participation in the administrative proceedings before the FCC, or pursuit of a settlement agreement directly with AT & T, creates any estoppel effect whatsoever.
[2] In Hartley v. Human Resources Admin., 132 A.D.2d 699, 518 N.Y.S.2d 178 (2d Dep't 1987), the court affirmed the dismissal of a complaint brought by a discharged employee against HRA. The complaint contained multiple deficiencies and was summarily dismissed, suggesting that HRA did not see the necessity of raising the issuing of its lack of capacity to be sued. In New York City Human Resources Admin. v. Carrey, 107 A.D.2d 625, 484 N.Y.S.2d 10 (1st Dep't 1985), the court granted HRA's petition for a writ of prohibition vacating the order of the lower court. HRA had asserted its lack of capacity to be sued, but participated in the hearings without prejudice to its claim that the court had no jurisdiction over it. Again, it must be assumed that HRA pursued the shortest path to termination of the litigation rather than fully pursuing the issue of its capacity to be sued.
[3] Because the Court has ruled that the complaint should be dismissed against HRA, the City is the only remaining defendant.
[4] Section 3813 of the New York Education Law requires that a claimant file a notice of claim to the governing body of the school district within three months of the accrual of the claim. Section 50-e of the General Municipal Law requires that a claimant file a notice of claim within 90 days of the accrual of the claim.
[5] In employing state corporate law to decide whether disinterested directors of an investment company may terminate a derivative suit brought against other directors under the Investment Company and Investment Advisers Acts of 1940, 15 U.S.C. § 80a-1 et seq., § 80b-1 et seq., the Supreme Court stated that "[t]he `consistency' test ... relieves federal courts of the necessity to fashion an entire body of federal corporate law out of whole cloth." Burks v. Lasker, 441 U.S. 471, 480, 99 S.Ct. 1831, 1838, 60 L.Ed.2d 404 (1979).
[6] There is some dispute as to whether notice of claim statutes are procedural or substantive. Though the D.C. Circuit Court clearly believed that the local District of Columbia provision was procedural, this Court has termed another notice of claim provision, § 3813 of the New York Education Law, as a substantive condition precedent to the asserted claim. Courtemanche v. Enlarged City School Dist., 686 F.Supp. 1025, 1032 (S.D.N.Y.1988); Piesco v. City of New York, 650 F.Supp. 896, 901 (S.D.N.Y.1987). Thus under the doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the filing of a notice of claim was required to maintain pendent state claims in federal court. Courtemanche, supra, 686 F.Supp. at 1032. The Court does not wish to engage in semantics over the nature of § 7-201 of the New York Administrative Code. The Brown court stated that if the local notice of claim statute was considered a substantive condition precedent, it "makes it more difficult to view it as filling a deficiency in federal law. State law is not usually thought to add elements of federal rights of action." Brown v. United States, supra, 742 F.2d at 1508.
[7] Without employing the detailed analysis of the D.C. Circuit in Brown, Second Circuit courts have held that notices of claim need not be filed pursuant to § 3813 of the New York Education Law or § 50-e of the General Municipal Law in § 1983 suits brought in federal court. Brandon v. Board of Ed. of Guilderland Cent. School, 635 F.2d 971, 973 n. 2 (2d Cir.1980); Courtemanche, supra, 686 F.Supp. at 1032; Burroughs v. Holiday Inn, 621 F.Supp. 351, 354-55 (W.D.N.Y. 1985); Williams v. Allen, 616 F.Supp. 653, 658 (E.D.N.Y.1985); but see Cardo v. Lakeland Cent. School Dist., 592 F.Supp. 765 (S.D.N.Y.1984). In Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), the Supreme Court held that a Wisconsin statute which required notice of claim to be filed for all suits against subdivisions of the state brought in state court was inapplicable to § 1983 suits brought in state court. The Court stated that while it agreed with the D.C. Circuit's holding in Brown, the issue then before it in Felder was one of preemption of a state court procedural rule by § 1983, rather than the adoption of a state rule in a federal court action. Id. at 140-41, 108 S.Ct. at 2313-14.
[8] Because the need for a statute of limitations in virtually all legal actions is so clear and well-recognized, courts often state that Congress intended the borrowing of a limitations period. Brown v. United States, supra, 742 F.2d at 1506. The Supreme Court has noted that "Congress not infrequently fails to supply an express statute of limitations when it creates a federal cause of action. When that occurs, `[w]e have generally concluded that Congress intended that the Courts apply the most closely analogous statute of limitations under state law.'" Reed v. United Transp. Union, 488 U.S. 319, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989) (quoting DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983)). The Supreme Court has noted on another occasion that "[a] federal cause of action `brought at any distance of time' would be `utterly repugnant to the genius of our laws.'" Wilson v. Garcia, 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985) (quoting Adams v. Woods, 2 Cranch 336, 342 (1805)).
[9] Plaintiff AT & T spends much time in its submissions arguing that strict application of the notice of claims provision, if applicable, would lead to "an extreme exaltation of form over substance." Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, at 1. Though plaintiff's arguments are moot given the Court's ruling on the inapplicability of the notice of claims provision, plaintiff has well documented the meaninglessness of the notice of claims requirement in this context.