OPINION OF THE COURT
Maurice Brill, J.
Defendant, a 22-year-old deaf and mute male, is charged in *516 the present indictment with acting in concert with another person to commit the crimes of criminal sale of a controlled substance in the third degree (Penal Law § 220.39), criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03). These charges stem from defendant’s alleged transfer of two bags of cocaine to an undercover police officer at the behest of another person to whom the officer gave a sum of United States currency. A small quantity of cocaine (3.5 grains) was allegedly involved.
Pursuant to CPL 210.40, defense counsel has moved for dismissal of these charges in the interest of justice. Counsel points to defendant’s present and lifelong inability to effectively communicate to others or to understand their communications. More specifically, he contends that defendant cannot adequately communicate with him and that it is, therefore, impossible to afford the defendant effective representation during the advent of legal proceedings. Counsel further states that defendant would require extensive, long-term training in a "communication skills program” in order to attain sufficient competence to understand (through a sign language interpreter) what is being said and communicated to him by counsel. In support of this position, a Communication Skills Progress Report from defendant’s present instructors and a letter of evaluation from the Director of Social and Rehabilitative Services at the New York Society for the Deaf have been appended to the moving papers. Other considerations which address the factors set forth in CPL 210.40 have also been addressed in support of said motion.
The People have answered in opposition. They, too, rely upon the aforementioned report and letter (conceding that no hearing is required) and upon their evaluation of the circumstances of this case in light of the considerations set forth in CPL 210.40. The thrust of the People’s opposition is that defendant’s disability is being exaggerated, that a sufficient means of communication could be devised to enable defendant to either enter a guilty plea or proceed to trial and that the seriousness of the offenses charged dictate a denial of the present motion.
This court has carefully considered the aforementioned arguments and supporting documents and makes the following findings in consideration of the factors set forth in CPL 210.40.
*517 (a) and (b) the seriousness and
CIRCUMSTANCES OF THE OFFENSES AND THE HARM CAUSED BY THE OFFENSES
The defendant is charged with the sale of a small quantity of cocaine. The "B” grade level assigned to this felony generally denotes the seriousness of the offense and the harm it causes. The circumstances of the alleged sale, however, in comparison to other felony-level cases in which more significant amounts of cocaine are sold, tend to minimize, on a relative basis, the seriousness of and the harm caused by the present offense. The court notes that the People have acknowledged the need for balancing the seriousness of the offense with defendant’s condition in their plea offer which recommends minimum incarceration and maximum probation.
(c) THE EVIDENCE OF GUILT, WHETHER ADMISSIBLE OR INADMISSIBLE AT TRIAL
The evidence of guilt, which would be the testimony of the undercover police officer who allegedly received the cocaine from the defendant, appears to be admissible at trial. Its sufficiency, in the present absence of any evidence of defendant’s possession of other narcotics or buy money, would, of course, be a question for the jury to decide at trial.
(d) THE HISTORY, CHARACTER AND CONDITION OF THE DEFENDANT
The defendant is 22 years of age, having no prior criminal record or other arrests since his present arrest on November 6, 1991. He was born in Guyana, has lived in the United States for 10 years and is a permanent legal resident. He resides in Kings County with his father and sister. He communicates with those two persons and his brother-in-law by means of rudimentary gestures rather than sign language. His communication has been limited, primarily, to his immediate family. According to the evaluation of representatives of the New York Society for the Deaf, defendant entered their Communication Skills Program in October 1990 and remained therein for 41 days. He reentered the program in May 1992 (subsequent to his arrest in this matter) and has been in attendance since that time. During this period his progress in acquiring formal sign language skills which would allow him to be effectively understood by others who are proficient in *518 sign language has been minimal. His primary mode of expressive and receptive communication continues to be through pantomime, drama and gestures. The Society’s evaluation notes that the defendant frequently nods affirmatively to statements and questions that he clearly does not understand. It further notes that defendant’s prognosis for improving his sign language communication skills is fair and somewhat indefinite, depending upon his attendance at the program and his level of participation in future program activities. It should be noted, however, that the outlook for improvement is limited by what appears to be an inherent developmental disability, in addition to being deaf-mute, which precludes the defendant from achieving a sophisticated level of communication competency. As a final note, it is indicated that although defendant will continue to benefit from the program, he will most likely continue to have severe communication and language limitations.
(e) ANY EXCEPTIONALLY SERIOUS MISCONDUCT OF LAW ENFORCEMENT PERSONNEL IN THE INVESTIGATION, ARREST AND PROSECUTION OF THE DEFENDANT
Inapplicable.
(f) THE PURPOSE AND EFFECT OF IMPOSING UPON THE DEFENDANT A SENTENCE AUTHORIZED FOR THE OFFENSE
This consideration would presuppose a judgment of conviction, which, in turn, would necessitate a finding of guilt. As expressed in the decision of this court, infra, no finding of guilt could fairly be obtained given the circumstances of defendant’s disability. Thus, discussion of the purpose and effect of imposing upon the defendant a sentence authorized for the offense would be inappropriate.
(g) THE IMPACT OF A DISMISSAL UPON THE CONFIDENCE OF THE PUBLIC IN THE CRIMINAL JUSTICE SYSTEM
The confidence of the public in the criminal justice system is not premised solely upon the prosecution and punishment of those accused of crimes. Equally important is the fairness with which such prosecution and punishment is carried out.
The present issue cannot properly be determined by accepting, as a starting premise, that defendant suffers simply from *519 a hearing disability. It has been demonstrated herein that counsel and defendant face serious problems in communicating with each other, even on a basic level, and even through the medium of an official sign language interpreter. Under these circumstances, fundamental obstacles to attaining a just resolution are encountered. For example, in preparing a defense, it is, of course, vital for counsel to have clear answers to such queries as (a) what exactly occurred at the time and place in question, (b) who were the parties in question and which person engaged in what specific activity, and (c) what specific role, if any, did defendant play during the incident. In conducting a defense, consultations are required during selection of the jury. Furthermore, defendant would need to understand the testimony of adverse witnesses in order to assist counsel during cross-examination. Even more serious than the above is the obstacle presented in offering a defense and testifying on the witness stand. In sum, absent thorough and effective communication between this defendant and counsel, no meaningful defense could be mounted at trial and no plea of guilty could fairly be recommended or accepted in good conscience. A contrary conclusion would be lacking in fairness and would invite the loss of public confidence in the criminal justice system.
(h) THE IMPACT OF A DISMISSAL ON THE SAFETY OR WELFARE OF THE COMMUNITY
The impact of a dismissal, in this case, upon the safety or welfare of the community is relatively slight. Although it is fair to say that the impact of low-level street sales of narcotics, in general, is well known, it cannot be said that a dismissal in this particular case would gravely impact upon the safety or welfare of the community.
(i) THE ATTITUDE OF THE COMPLAINT WITH RESPECT TO THE MOTION
Not applicable.
(j) ANY OTHER RELEVANT FACT INDICATING THAT A JUDGMENT OF CONVICTION WOULD SERVE NO USEFUL PURPOSE
It is fully realized that this court’s discretionary power to *520 dismiss in the interest of justice is to be exercised sparingly, and that a sensitive balancing of the interests of the individual and the People is required. The present decision is not meant to serve as a general license for disabled individuals to commit crimes. Nevertheless, the present case presents the court with a rare set of circumstances. The key issue in the present matter is not whether a judgment of conviction would serve a useful purpose but rather, whether any judgment could be arrived at fairly. The court is convinced that such result is not attainable in this case, given the defendant’s disability and the bleak prognosis for his being able to reach an effective level of cognitive and communicative skill within a reasonable time period. At the present time, counsel may not, in good conscience, dispose of this case by plea and he cannot effectively represent defendant at trial. Defendant is in no position to assist in his own defense.
Accordingly, for the reasons noted, defendant’s motion to dismiss in the interest of justice is granted.