■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GLADYS COLON, Respondent. [620 NYS2d 935] —Orders, Supreme Court, New York County (Brenda Soloff, J.), entered May 21, 1993 and September 23, 1993, which dismissed, in the interest of justice, pursuant to CPL 210.40, the indictment charging defendant with criminal sale of a controlled substance in the fourth degree and criminal possession of a controlled substance in the fifth degree, affirmed.

Nardelli, J., concurs in a memorandum in which Carro, J., concurs; Kupferman, J., concurs in a separate memorandum; Sullivan, J. P., and Tom, J., dissent in a memorandum by Sullivan, J. P., all as follows:

Nardelli, J. (concurring).

Defendant, 39 years of age, has an I.Q. of 64, which puts her in the range of the "mildly retarded." In earlier times she would be called a moron. She is the product of a neglectful and abused childhood. As a child she was thrown from a fifth-floor fire escape and as a result has a metal plate in her head. She has been diagnosed as having gross organic brain damage. Her mother kept her from attending school, and she is illiterate, can count only to 39, cannot add 10 and 15, does not know how many days there are in a week, and does not know of any Presidents of the United States after Reagan. She already has one conviction for sale of a controlled substance and when arrested was on probation; she was sentenced to one to three years for violation of probation, served one year, and was released.

The trial court granted defendant's motion to dismiss the indictment in the interests of justice pursuant to CPL 210.40. In appealing, the People argue that her mild mental retardation does not warrant a dismissal of the indictment, citing *People v Harmon* (181 AD2d 34), *People v Saunders* (161 AD2d 611), *People v Brooks* (142 Misc 2d 678), and *People v Lasdon* (89 Misc 2d 934). *Lasdon* is not at all applicable. Lasdon was the son of an " 'extremely wealthy' " father, was a college man, and suffered "from deeply rooted psychological disorders." *(Supra,* at 935.) He was indicted for criminal sale of a controlled substance in the *second* degree. The Supreme Court

held that his "mental illness" did not constitute such a " 'compelling factor, consideration or circumstance' " as to warrant dismissal under CPL 210.40 *(supra,* at 936). The People, however, have confused mental illness with mental retardation. That confusion was repeated in the decision in *Brooks,* where a borderline mentally retarded man, suffering from a brain disorder resulting from being hit by a car while a young child, had broken the window of a beer distributor and stolen a case of beer and a television set while apparently intoxicated. The court examined the " 'decalogue' " of criteria set forth in CPL 210.40 (1) and cited *Lasdon* in finding that "mental illness alone does not constitute a compelling factor" and that it was "but one of Steven Brooks' problems" *(supra,* at 684, 685). It then, however, dismissed the indictment pursuant to CPL 210.40 (1) largely on the grounds that the effect of imposing a sentence on Brooks would not be positive, noting: "Surely, Steven Brooks with his multitude of problems has a chance to break his 'cycle' by his placement in a residential treatment facility." *(Supra,* at 686.)

That the People should rely on these four cases indicates a lack of compelling authority mandating a reversal here. The analyses of the criteria in *Brooks (supra),* for instance, with the exception of the court's erroneous concern with *Lasdon (supra)* and "mental illness", are all applicable here, only more strongly. Brooks was a borderline retardate and his breaking the window to steal the beer and television set was a violent act and a crime of which the victim would readily perceive himself as a victim. Moreover, these classifications of retardation are technical classifications: "borderline" retarded is one bracket above "mildly" retarded; whereas defendant here has an I.Q. of 64, Brooks' I.Q. would be from 70 to 84 *(see,* 9 Encyclopedia Britannica 673 [1974]). Harmon's handicap was dyslexia. Saunders had been charged with assault in the second degree and his subsequent threats and harassment of complainant's family showed that the interest of public safety was involved.

The People also point out that defendant's "mild mental retardation" did not impede her ability to form the requisite criminal intent. But dismissal in furtherance of justice is a remedy to be used "even though there may be no basis for dismissal as a matter of law" (CPL 210.40 [1]). The People's repeated reference to defendant's "mild" retardation perhaps illustrates a baneful effect—in this case a potentially cruel effect—of the neutralization and "gentling" of language in this ungentle second half of the century. We no longer call things

what they are. An illiterate with a 64 I.Q. who cannot count beyond her own age, who endured a crippling childhood, may be "mildly" retarded in the technical language of today, but she is horrendously handicapped. Defendant has recently married. Her husband is standing by her in her difficulty. She has had a taste of prison as a result of her violation of probation and it had had an impact on her. If she sells methadone again, she will have inflicted a wound upon society, but not a great wound. Society is strong enough to take that risk.

In considering whether there exists some compelling factor, consideration, or circumstance demonstrating that prosecution would result in injustice, the court notes with respect to the criteria of CPL 210.40 (1):

(a), (b) and (c) the crime is serious in that it relates to controlled substances, but the circumstances here do not demand incarceration; it is not vicious; in *People v Reets* (157 Misc 2d 515) where a 22 year old deaf mute who communicated essentially only with his family, and then only by rudimentary gestures, did not know sign language, and seemed to have a developmental disability that impeded his learning it, was indicted for criminal sale of a controlled substance (cocaine) in the *third* degree, the Supreme Court balanced the seriousness of the offense with his condition and dismissed the indictment; the crime here is harmful, but the immediate harm is not visited upon unwilling persons; the evidence of guilt is strong;

(d) defendant's history and circumstances have been discussed; the data set forth in that discussion are from a report by Stuart M. Kirschner, Ph.D., a licensed psychologist, prepared after a three-and-a-half-hour examination of defendant; she has borne her incarceration in a positive manner, working in the laundry and avoiding the altercations of prison life; her retardation is a prime factor affecting the consideration of all other factors;

(e) there has been no misconduct by law enforcement personnel;

(f), (g), (h) the People point out that the recognized purposes of sentencing are retribution, rehabilitation, isolation, and deterrence, but assert that Justice Soloff considered only one of these factors, rehabilitation. Retribution and isolation do seem of minimal importance here. Deterrence is of more importance, but—again—it seems better for society to take a chance that leniency may, with this handicapped defendant,

be more effective than imprisonment; in *Brooks (supra),* relied on by the People, the court dismissed the indictment, noting that Brooks had a chance to break his cycle without incarceration; the impact of a dismissal here upon the confidence of the public in the criminal justice system and upon the safety and welfare of the community would seem to be positive or minimal, certainly not seriously detrimental;

(i) and (j) there was no specific victim who could object to a dismissal here; defendant has a husband who has stood by her in these difficulties; his support at this stage, like the residential treatment for Brooks, could perhaps make a positive crucial difference in her life.

Kupferman, J. (concurring in result).

Defendant presents a sympathetic case. On the other hand this is not a first offense and, based on past experience, can easily be repeated. Yet to utilize limited prison space for isolation for this situation is not cost or justice effective. Obviously, there should be a program for treatment to be applied here, but it is not an option which we are given.

With the scales weighing in the balance, I conclude that the better policy (not the best policy) is to affirm.

Sullivan, J. P. (dissenting).

The circumstance upon which the motion court heavily relied and which the majority finds most compelling is defendant's mental retardation. This characteristic is, unfortunately, common to all too many criminal defendants *(see, e.g., People v Sass,* 182 AD2d 861, *lv denied* 80 NY2d 837; *People v Schwartz,* 204 AD2d 973; *People v Moore,* 203 AD2d 900, *lv denied* 84 NY2d 830; *People v Wilcox,* 194 AD2d 820; *People v Rowles,* 188 AD2d 926) and hardly renders this "that 'rare' and 'unusual' case [which] 'cries out for fundamental justice beyond the confines of conventional considerations' " *(People v Insignares,* 109 AD2d 221, 234, quoting *People v Belge,* 41 NY2d 60, 62-63 [Fuchsberg, J., concurring]; *see also, People v Reyes,* 174 AD2d 87, 91).