OPINION OF THE COURT
John H. Wilson, J.
Defendant is charged with one count of forcible touching (Penal Law § 130.52), a class A misdemeanor, and one count of harassment in the second degree (Penal Law § 240.26), a violation.
By motion dated September 26, 2013, defendant seeks dismissal of the docket in the interest of justice.
The court has reviewed the court file, defendant’s motion, and the People’s response dated December 5, 2013. The court has also reviewed three reports from defense counsel, dated February 28, 2014, May 5, 2014, and June 17, 2014.
For the reasons stated below, the motion to dismiss in the interest of justice is denied.
Further, for the reasons outlined below, a psychiatric examination of the defendant is ordered pursuant to CPL 730.30.
Factual Statement
Pursuant to the criminal court complaint, on or about March 20, 2013, at approximately 11:04 a.m., inside of 1250 Franklin Avenue, Bronx, New York, the defendant is alleged to have approached the complainant while she was “waiting for the elevator . . . [and] pushed her on her left shoulder turning her around so that her back was against the elevator door.” (See criminal court complaint dated Mar. 20, 2013 at 1.)
*766 The defendant is then alleged to have “grabbed [the complainant’s] breasts with both of his hands and rubbed them . . . defendant did then reach down and in between [complainant’s] legs with his right hand and grabbed and squeezed [her] vagina over her pants while lifting upwards with his hand.” (See criminal court complaint dated Mar. 20, 2013 at 1.)
The complaint states further that “defendant did not have permission to grab or touch her in such a manner and that due to defendant’s aforementioned conduct, she experienced annoyance, alarm and fear for her physical safety.” (See criminal court complaint dated Mar. 20, 2013 at 1.)
Defendant was released after his arraignment on March 21, 2013, and has remained at liberty during the pendency of this case.
Legal Analysis
(A) Defendant is not entitled to dismissal of this case in the interest of justice.
CPL 170.40 (1) provides for a variety of factors which require dismissal of “[a]n information, a simplified traffic information, a prosecutor’s information or a misdemeanor complaint, or any count thereof ... as a matter of judicial discretion” if “some compelling factor, consideration or circumstance clearly demonstrates] that conviction or prosecution of the defendant upon such accusatory instrument or count would constitute or result in injustice.” (See also CPL 170.30 [1] [g].)
The discretion of the court to dismiss an information in the furtherance of justice is not absolute, nor is it uncontrolled. (See People v O’Grady, 175 Misc 2d 61, 65 [Crim Ct, Bronx County 1997], citing People v Wingard, 33 NY2d 192 [1973].) In fact, this power is to be “employed cautiously and sparingly.” (See People v Eubanks, 114 Misc 2d 1097, 1098 [App Term, 2d Dept, 2d & 11th Jud Dists 1982].)
On a motion to dismiss in the interest of justice, the burden is on the defendant to establish “some ‘compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant. . . would constitute or result in injustice.’ ” (See People v Boulet, 88 Misc 2d 353, 355 [Rochester City Ct 1976]; People v Verardi, 158 Misc 2d 1039, 1042 [Crim Ct, Kings County 1993].)
When considering the motion, the court need not
“engage in a point-by-point ‘catechistic’ discussion of all 10 [statutory] factors[;] . . . [i]nstead, the *767 court is required to consider the factors ‘individually and collectively’ in making a value judgment that is based upon striking a sensitive balance between the interests of the individual and those of the state.” (See People v Gragert, 1 Misc 3d 646, 648 [Crim Ct, NY County 2003].)
This court finds that none of the factors enumerated in CPL 170.40 provides a basis for dismissal of this prosecution.
The defendant is alleged to have suffered a “severe case of typhoid fever” when just seven months old, and then “contracted meningitis, a rare complication in more serious forms of typhoid fever. The combination of these two illnesses left him deaf.” (See defendant’s motion dated Sept. 26, 2013 at 5-6, ¶ 8.)
Defendant’s parents sent him to a school for the deaf when he was three years old, however, defendant “felt uncomfortable and isolated with the school’s environment and dropped out in the 3rd grade. He never learned to read, write or communicate via any sign language system, making communication extremely difficult not only with his family but the outside world at large.” (See defendant’s motion dated Sept. 26, 2013 at 6, ¶ 9.)
Counsel for the defendant asserts that
“it has proven extremely difficult to communicate with [defendant] regarding the nature and progress of his pending criminal case. Even with the assistance of the Court American Sign Language (ASL) interpreters, as skilled as they are, it has been impossible to adequately convey to [defendant] many of the basic tenets of the criminal justice process.” (See defendant’s motion dated Sept. 26, 2013 at 7, ¶ 13.)
Counsel enlisted the assistance of a Legal Aid forensic social worker, and another ASL interpreter. However, defendant “has no recognition of ASL, nor of any other formally recognized sign language system . . . [Defendant] communicated with his mother, however, that system consisted primarily of gestures and pantomime.” (See defendant’s motion dated Sept. 26, 2013 at 7-8, ¶ 14.)
Without the ability to communicate with her client, counsel “cannot begin to discuss the relatively sophisticated concepts necessary for [defendant] to make an educated decision about a disposition or of the risks of going to trial.” Counsel has therefore concluded that “these communication problems have *768 also made it impossible that [defendant] will be able to meaningfully participate in his own defense should a trial eventually take place.” (See defendant’s motion dated Sept. 26, 2013 at 8-9, ¶ 16.)
A motion to dismiss in the interest of justice “should be granted only where a defendant has demonstrated by a preponderance of the credible evidence that a compelling reason exists to warrant dismissal . . . Where the defendant does not meet this burden, the court may summarily deny the motion.” (See People v Watson, 182 Misc 2d 644, 650 [Crim Ct, Bronx County 1999] [citation omitted]; see also People v Batances, 193 Misc 2d 445 [App Term, 1st Dept 2002], lv denied 99 NY2d 533 [2002].)
Here, defendant has failed to meet his burden. Although defendant presents a sympathetic figure, the mere fact that defendant is deaf, and counsel has trouble communicating with the defendant, does not merit dismissal of this matter in the interest of justice.
Regarding the merits of defendant’s application, the criminal court complaint alleges that the defendant “grabbed [the complainant’s] breasts with both of his hands and rubbed them . . . defendant did then reach down and in between [complainant’s] legs with his right hand and grabbed and squeezed [her] vagina over her pants while lifting upwards with his hand.” (See criminal court complaint dated Mar. 20, 2013 at 1.)
These actions are alleged to have occurred as the complainant was waiting for an elevator. Defendant prefaced his sexual advances by pushing the complainant “on her left shoulder turning her around so that her back was against the elevator door.” (See criminal court complaint dated Mar. 20, 2013 at 1.)
Under these circumstances, “[c]ontrary to the defendant’s contentions, this is not one of those rare and ‘unusual case[s]’ which cries out for justice ‘beyond the confines of conventional considerations.’ ” (See People v Hudson, 217 AD2d 53, 55 [2d Dept 1995] [citation omitted].)
In People v Reets (157 Misc 2d 515 [Sup Ct, Kings County 1993]), the court dismissed a charge of criminal sale of a controlled substance in the third degree (Penal Law § 220.39), a class B felony, where the defendant was a deaf-mute. Though the charge in Reets was more serious on its face, the defendant there was more deserving of a dismissal in the interest of justice primarily due to his “alleged transfer of two bags of cocaine to *769 an undercover police officer at the behest of another person” (157 Misc 2d at 516 [emphasis added].)
Clearly, the defendant in Reets was being used and taken advantage of, while this defendant is alleged to have intentionally acted in a sexually aggressive manner, without any direction from any third party.
It is true that in both Reets and the present case, “counsel and defendant face serious problems in communicating with each other.” (157 Misc 2d at 519.) However, in Reets, “defendant entered [a] Communication Skills Program . . . and has been in attendance.” (157 Misc 2d at 517.) Here, as detailed in counsel’s motion and her reports dated February 28, 2014, May 5, 2014 and June 17, 2014, this defendant has spent years resisting all efforts to teach him to communicate.
In third grade, he left a school for the deaf, never to return. (See defendant’s motion dated Sept. 26, 2013 at 6, ¶ 9.) Upon arrival in the Bronx at the age of 19, he was enrolled in “a vocational program provided by the state of New York for people with disabilities ... he found the commute to midtown Manhattan, where the classes were held, daunting. He often got lost and felt very nervous and anxious.” He left the program after only three months. (See report dated Feb. 28, 2014 at 1-2.) At the court’s suggestion, defendant was referred to the Lexington School for the Deaf, in Jackson Heights, however, defendant declined, since “he would have tremendous difficulty navigating the subway system as he can neither read nor write.” (See report dated Feb. 28, 2014 at 2.)
Most significant to our analysis is the assessment of defendant’s own mother — “her son has refused any help in the past, and that the family is tired of trying to help when [defendant] ‘does not listen.’ ” (See report dated May 5, 2014 at 3.)*
In Reets, the court noted that “[t]he present decision is not meant to serve as a general license for disabled individuals to commit crimes.” (157 Misc 2d at 520.) To dismiss this case alleging sexually aggressive conduct would not be in the interest of justice.
*770 Therefore, based upon defendant’s failure to provide any compelling factor, consideration or circumstance which would warrant dismissal in the interest of justice, and on the merits of the application, defendant’s motion is denied. (See People v Clayton, 41 AD2d 204 [2d Dept 1973].)
(B) On the court’s own motion, defendant is ordered to undergo a psychiatric evaluation pursuant to CPL 730.30 (1).
Though defendant is not eligible for dismissal of this case in the interest of justice, counsel’s inability to communicate with the defendant is an issue that is of great concern to this court.
“It is the responsibility of the court to ensure that the appropriate accommodation is provided in the language most readily understood by the defendant. “When adjudicating a deaf criminal defendant, courts must make certain that the defendant has equal access to various due process activities, such as assisting counsel in the development of a defense.” (See Katrina Miller & McCay Vernon, Linguistic Diversity in Deaf Defendants and Due Process Rights, 6 J Deaf Stud & Deaf Educ [Issue 3] 226, 226 [Summer 2001].)
To accomplish this necessary goal, the court must make accommodations for a defendant with cognitive impairments, including, but not limited to, frequent breaks, monitoring of sedation-causing medication, proceedings explained in simple terms, and any other method by which the defendant’s ability to aid in his or her own defense may be effectuated. (See United States v McFall, 2011 WL 465718, *13, 2011 US Dist LEXIS 11283, *37-38 [WD Pa, Feb. 4, 2011, No. 2:07-CR-00411-JFC].)
In People v Francabandera (33 NY2d 429, 435-436 [1974]), the Court of Appeals stated that “ ‘the test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.’ ” (33 NY2d at 436, citing Dusky v United States, 362 US 402 [1960].) If the defendant does not fit this criterion, then “[t]he Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the government from convicting or sentencing a defendant who is incompetent.” (See United States v Allen, 2011 WL 4352793, *19, 2011 US Dist LEXIS 108094, *52 [SD Fla, Aug. 26, 2011, No. 9:10-cr-80175-JMH].)
Under CPL 730.10 (1), an “ ‘incapacitated person’ means a defendant who as a result of mental disease or defect lacks *771 capacity to understand the proceedings against him or to assist in his own defense.” Further, under CPL 730.30 (1), “the court . . . must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person.” (Emphasis added.)
In Matter of New York City Human Resources Admin., Dept. of Social Servs. v Carey (107 AD2d 625, 625 [1st Dept 1985]), the defendant “ ‘could only respond to spoken language in seemingly random grunts and noises.’ ” The court held that the defendant “was an incapacitated defendant in that he could neither appreciate the nature of the charges against him nor cooperate in his defense.” (Id.)
The Carey court examined closely the issue of deafness as a basis for a finding of incapacity since a “social worker maintained that . . . [defendant’s] massive hearing defect was the base reason for [defendant’s] incapacity, such a physical impairment did not come within the meaning of article 730.” (107 AD2d at 626.) However, the First Department unequivocally held that
“this defendant, certified incapacitated by two psychiatrists, is unable to stand trial . . . He is clearly ‘a defendant who as a result of mental . . . defect lacks capacity to understand the proceedings against him or to assist in his own defense.’ (CPL 730.10, subd 1.) The statute is broadly stated but unambiguous. It does not parse the word ‘defect’ so as to distinguish between the innumerable sources of disability, once found.” (107 AD2d at 627; see also State v Smith, 471 So 2d 954, 957 [La App 2d Cir 1985] [“(t)he result of the incapacity, whether physical or mental, has the same effect. It deprives defendant of a fair trial because he is incapable of assisting in his defense”].)
In Francabandera, where the Court of Appeals ruled that a defendant with amnesia was not incapacitated within the meaning of CPL 730.10 (1), the Court stated that
“we are not prepared to hold that the Legislature had anything in mind in enacting this provision other than the situation where the defendant, because of a current inability to comprehend, or at least a severe impairment to that existing mental state, cannot with a modicum of intelligence assist counsel.” (33 NY2d at 435-436; see also People v Bisnett, 144 AD2d 567, 569 [2d Dept 1988] [where *772 defendant has sleep apnea, causing him to fall asleep involuntarily, court may “be required to hold a hearing once sufficient doubt is raised as to the defendant’s competency to stand trial . . . However the extent and content of the hearing are within the discretion of the court” (citations omitted)].)
There can be no doubt that the instant defendant fits within these definitions. His counsel has made very clear her inability to communicate with her client, and his inability to understand the proceedings. There is also data to support the view that a “linguistically deprived person” may, in fact, have a condition described as primitive personality disorder, which is characterized by “severe language deprivation, resulting in a failure to develop communication proficiency in any signed or spoken language, functional illiteracy, an impoverished educational background, and a lack of awareness of basic social structure, mores, and knowledge considered common information to the average citizen.” (See Eric Eckes, The Incompetency of Courts and Legislatures: Addressing Linguistically Deprived Deaf Defendants, 75 U Cin L Rev 1649, 1666 n 107 [2007], citing People v Lang, 127 Ill App 3d 313, 316 n 2, 468 NE2d 1303, 1305 n 2 [1984]; see also Jamie McAlister, Deaf and Hard-of-Hearing Criminal Defendants: How You Gonna Get Justice if You Can’t Talk to the Judge?, 26 Ariz St L J 163 [1994].)
Therefore, defendant is ordered to submit to a psychiatric examination pursuant to CPL 730.30 (1). All other arguments advanced and relief requested by the parties have been reviewed and rejected by this court as being not applicable, or without merit.

 Counsel’s report of June 17, 2014 indicates that defendant did go to an appointment for reentry into his original vocational program in May 2014, and was assessed by his primary care physician on May 4, 2014. The court is further informed that defendant has been scheduled for a psychiatric assessment on June 23, 2014. The court has also learned that defendant was rearrested under docket 2014BX024029, and arraigned on May 6, 2014, for criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), a class A misdemeanor.